## Fox *against* The Northern Liberties.

An incorporated district is not liable in trespass for the illegal seizure of the plaintiff's horse by one of its officers, for an alleged violation of its ordinances, when in fact no such violation took place, unless the corporation previously authorized or subsequently ratified the seizure.

It seems that where there is a joint trespass by two, a recovery of judgment against one in trespass without satisfaction, will not bar a subsequent action of trover against the other.

But it is otherwise where one commits a trespass by seizing personal property and then sells it to another, and the owner recovers judgment against the trespasser for the value of the property and for the tortious taking, as such judgment changes the property, and the former owner cannot seize or claim it.

THIS was a writ of error to the District Court for the city and county of *Philadelphia,* in which John Fox brought an action of trover·against the Commissioners and Inhabitants of the Kensington district, of the Northern Liberties, for the wrongful taking and conversion of a horse.

The defendant pleaded as follows :

" And the said, the Commissioners, &c., by their attorney, come, &c., and say, &c. Because they say that the said trespass in the declaration aforesaid mentioned, was done and committed against the said John, by one Eliakim Hillman, and that the said John Fox, after the said trespass was committed as aforesaid, to wit, in the term of June 1833, in the District Court of the city and county of Philadelphia, did implead the said Eliakim Hillman of the said trespass, and in that action it was so proceeded that the said John Fox, to wit, on the nineteenth day of January 1835, did recover against him the said Eliakim Hillman, by confession of judgment, the sum of $500, for his damages which he the said John Fox had sustained by the trespass of the said Eliakim Hillman, &c., as by the record of said suit now remaining in the said District Court, will more fully appear, and on which no writ of execution has at any time been issued by the said John Fox; and that the said trover and conversion charged against the said defendants by him, for which the said John Fox has recovered the said sum of $500, against the said Eliakim Hillman, is the same trespass whereof the said John Fox now complains against the said defendants, and not other nor different, and that the said John Fox by whom the recovery was had against the said Eliakim Hillman, is the same John Fox who now prosecutes as aforesaid against the said defendants, and this they are ready to verify. Wherefore, the said Commissioners pray judgment, and that the said John Fox may be precluded," &c.

The plaintiff demurred generally to this plea, and judgment was given for the defendants on the demurrer.

It was agreed that the following facts be presented to the court in addition to those stated in the plea, and that they be considered as a part of the case.

The action is for illegally taking plaintiff's horse, in February 1833, under a false pretence that he was violating the ordinances of the Kensington district.

The trespass was committed by Eliakim Hillman, who had acted, and then acted as Superintendent of Police. The said Hillman was elected Superintendent of Police in October 1831, for one year, and acted as such. He was again elected in 1832, and acted as such. He gave no bonds, though required by the ordinances to be given for the faithful performance of duties for the year commencing in October 1832, and before the expiration of the term he was elected. No part of the judgment for $500 confessed by Hillman has been paid.

It is further agreed that this action was tried before a jury on all the facts herein stated, and that a verdict was found for the plaintiff, damages $250. Subject to the opinion of the court in a point reserved whether the above stated action against Hillman barred the plaintiff in this present action. That the court granted a new trial, being of opinion with the defendant.

That the defendant then put in the above plea, to which plaintiff demurred, and defendant joined in demurrer, and judgment was thereon entered for defendant.

Error assigned:

The court erred in giving judgment for the defendants.

The case was argued by
*Hare* and *Meredith,* for the plaintiff in error; and,
*J. M. Read, contra.*

The opinion of the Court was delivered by

KENNEDY, J.— This action, which is trover, was brought in the District Court for the city and county of Philadelphia, by the plaintiff in error, against the defendants, to recover the value of a horse, the property of the plaintiff, which, as he alleges, the defendants converted to their own use. The defendants, by their attorney, pleaded, that the trespass mentioned in the declaration of the plaintiff, was committed by one Eliakim Hillman, and that the plaintiff, after the said trespass was committed as aforesaid, impleaded the said Eliakim, by commencing an action of trespass against him in the said District Court, to June term 1833, wherein, by confession of the said Eliakim, he recovered a judgment for $500 damages besides his costs of suit; on which no writ of execution had at any time been issued by the said plaintiff; and that the said trover and conversion charged against the said defend-

[Fox v. The Northern Liberties.]

ants here, is the same trespass and no other, for which he recovered the said sum of $500 against the said Eliakim Hillman. The plaintiff demurred generally to this plea, in which the defendants joined; and the court thereupon rendered a judgment in favour of the defendants. But before the judgment was given by the court, the parties agreed that the court, in addition to the facts set forth in the plea, should consider the following facts also as part of the case, to wit, that the action is for illegally taking the plaintiff's horse, in February 1833, under a false pretence, that he was violating the ordinances of the Kensington district. That the trespass was committed by Eliakim Hillman, who had acted, and then acted as Superintendent of Police. That the said Eliakim was elected Superintendent of Police in October 1831, for one year, and acted as such. That he was again elected in 1832, and acted as such; but gave no bond for the faithful performance of the duties of his office, for this latter year, though required to do so by the ordinances of the district. That no part of the judgment for the $500 confessed by Hillman has been paid. That this action was tried before a jury on all the facts as here stated, and that a verdict was given for the plaintiff, assessing the damages at $250; subject, however, to the opinion of the court on a point reserved, whether the recovery of the judgment against Hillman barred the plaintiff in this action. From this statement of the facts in the case, it is difficult, if not altogether impossible, to discover any ground or principle upon which this action can be maintained against the defendants. For it does not appear that they consented to, or authorized Hillman's taking the plaintiff's horse, either directly or indirectly, or that they ever participated in the fruits or any benefit that may have arisen from the conversion of the horse. Indeed, so far from it, that it has been admitted that Hillman never accounted or paid over to the defendants anything for or on account of the horse. If it appeared, in the case, that the defendants had received the proceeds arising from the sale made of the horse by Hillman, who professed to have taken and sold the same, under the authority given him by the ordinances of the district, there might be some colour, at least, for saying that the defendants had made themselves liable, on the ground that they had thereby approved and confirmed the act of Hillman in taking and disposing of the horse; *omnis ratihibitio retrotrahitur et mandato seu licentiæ priori equiparatur.* But there is not the slightest colour for holding them liable because Hillman seized the horse of his own will, and under a mere pretended violation, as is admitted, of the ordinances of the district. The ordinances were his guide, and pointed out to him his duty, but whether there was such a violation of them as would warrant his seizing the horse, was a question which he was to judge of and to determine for himself, on his own responsibility, and not on that of the defendants. If he erred in his judgment in this

III. — 14

respect, and took the horse when no violation of the ordinances had been committed, to warrant his doing so, he could not be said to be acting under the authority of them, more than a sheriff could be said to act under the authority of a writ in his hands against A. by taking B. under it.   In this latter case, it never has been supposed that any blame could be attached to the party who issued or caused the writ to be issued and directed to the sheriff, for the purpose of having it executed against A.; nor is it conceivable how any blame can be fastened upon a municipal corporation, because its officer, who is appointed or elected for the purpose of causing to be observed and carried into effect the ordinances duly passed by the corporation for its police, either mistakenly or wilfully, under colour of his office, commits a trespass; for in such case, it cannot be said, that the officer acts under any authority given to him, either directly or indirectly by the corporation; but must be regarded as having done the trespass of his own will, and he alone must be looked to for compensation, by the party injured.   It is like the familiar case of master and servant, where the latter wilfully does an act without the consent or authority of the master, by which a third person is injured, the servant alone is answerable.   *Macmanus* v. *Crickett*, (1 *East* 106); *Croft* v. *Allison*, (4 *B. & A.* 590); *Jones* v. *Hart, Salk.* 441.

If the defence in this case had rested entirely upon the facts set out in the plea, which have been admitted by the demurrer, it is perhaps more than probable that they would not be sufficient, in law, to bar the plaintiff of his action.   Because, if the inference may be fairly drawn from the allegations contained in the plea, which I am rather inclined to think it may, that Hillman and the defendants were jointly concerned in taking the horse, so as to be joint tresspassers therein, the judgment of recovery against Hillman, I take it, would not bar the plaintiff in this action, without payment or satisfaction thereof having been made to the plaintiff in some way.   For joint trespassers are liable either jointly or severally to the party injured.   He may, therefore, sue each separately, at the same time, or consecutively, and prosecute his suit against each to judgment; and having obtained judgment against each, he has a right to elect to proceed by execution to enforce payment of any one of the judgments he pleases, and, in doing so, will select, as we may suppose, that judgment which he shall consider the most favourable for him.   *Cocke* v. *Jennor*, (*Hob.* 66); *Lendall & Pinfold's Case*, (1 *Leon.* 19; 3 *Id.* 122); *Rowlinson* v. *Oriel*, (*Comb.* 144, 145); *Morton's Case*, (*Cro. Eliz.* 30); but see *Boyce* v. *Bailiffe*, (1 *Camp.* 60), *per Lord Ellenborough, which seems contra*.   But where the trespass consists in forcibly taking the personal property from the owner thereof, by one who sells it to a third person, and the owner sues the trespasser, and recovers judgment against him for the value of the property as also for the tortious taking of it, he cannot, I apprehend, afterwards either

retake the property, or sue the vendee of the trespasser for or on account of it; because his recovery of the judgment against the trespasser, for the value of the property, is regarded as the price thereof, which he has sought the law to allow him, and may therefore be considered as a sale and transfer of his right in the property to the defendant. By obtaining the judgment, he acquires a right to demand and receive, from the defendant, a specific sum of money in lieu and in satisfaction of his right to the property, and ought not therefore to be permitted to seize or claim the property itself afterwards. If this be not so, he would have a right to seize and retake the property in the hands of the vendee of the defendant. Then suppose he does do so, what would become of his judgment, or what effect would such an act have upon it? Could he afterwards proceed by execution upon his judgment to enforce the payment of the whole amount, or any part thereof? Suppose his judgment, which includes damages assessed for the value as well as for the tortious taking of the property, is equal in amount to double or treble the real value of it, does he release the amount of the judgment, or any part of it, by retaking the property? and if only a part, how is that part to be ascertained? Or suppose that the defendant is still in possession of the property, without having sold or disposed of it, and the sheriff, by virtue of an execution, issued by the plaintiff upon the judgment, takes the same property and sells it, for one-fourth the amount of the judgment, and pays the proceeds of such sale over to the plaintiff, who receives it without knowing how it was made or obtained by the sheriff; can the plaintiff afterwards retake the property from the sheriff's vendee, or sue him for it, if upon demand he refuses to deliver it? These are questions, as it appears to me, that cannot be answered satisfactorily, except upon the principle that the recovery of the judgment by the owner of the property against the wrongful taker of it, transfers all the right therein of the former to the latter. It must be admitted, however, that a diversity of opinion exists upon this subject: but the authority in this state, so far as we have any evidence of it, seems to be in favour of the principle that the judgment alone in such case transfers to the defendant the plaintiff's right to the property. *Floyd* v. *Browne*, (1 *Rawle* 121); *Marsh* v. *Pier*, (4 *Rawle* 286); and the authorities there cited. For authorities *pro* and *con.*, see 2 *Kent. Com.* 387, 288, *in notes.* The judgment is therefore affirmed.

Judgment affirmed.