## WILLIAM W. PRICE v. THE NEW JERSEY RAILROAD AND TRANSPORTATION COMPANY.

1. The effect of the statutory provision authorizing amendments is, that every error in form, no matter how radical, can be corrected at any stage of the suit, in all civil causes, whenever such correction becomes necessary to enable the parties to try the matters which they contemplated to try, or to sustain the decision resulting from such trial.

2. A suit in trespass, under the circumstances permitted to be changed into one in case, after trial and verdict.

3. A party whose cattle, without fault on his part, escape from his enclosure and wander on to a railroad track, and are there killed by alleged carelessness in not slackening the speed of the locomotive, cannot recover for their loss from the railroad company.

---

In trespass. On motion for a new trial.

This action came on to be tried at the     circuit. The plaintiff claims damages of the defendants for the loss of two horses killed by a locomotive of the defendants. A verdict was rendered for the plaintiff, and an application for a new trial was made on two grounds—1st, that upon the case as presented by the evidence, the plaintiff was not lawfully entitled to recover; and 2d, that the court had admitted unlawful evidence against the objection of the defendants.

The rule was argued by *Parker & Keasbey*, for plaintiff, and *J. P. Jackson, F. H. Teese*, and *A. O. Zabriskie*, for defendants.

THE CHIEF JUSTICE. This is an action of trespass. The

injury complained of was the killing of two horses of the plaintiff by the locomotive of the defendants. The horses were upon the railroad track and were run over, as it is alleged, in consequence of the carelessness of the engineer in charge of the locomotive. It is not pretended that the act was wilfully done by the agent of the company, by force of any command or authority derived from them, express or implied.

It is obvious, therefore, that the only act of the defendants of which the plaintiff can complain, was the employment, by them, of a negligent servant. It is upon this ground alone that he has a right to call upon them for indemnification. But the injury resulting, being entirely consequential to the employment of the agent, the remedy must be sought, by force of rules of law as ancient as the modes of legal redress, in an action on the case and not in the form of trespass. It would be, in my opinion, altogether idle to discuss at any length this question of mere form, when the rule above stated is entirely unquestioned by any judicial authority. It is true that the court was referred, in support of this action in its present shape, to *Redfield on Railways* 381, *note* 6. But I am unwilling to adopt the speculations on this subject, contained in the treatise alluded to. The theory there broached, for it nowhere else makes its appearance in the law, is, that as a corporation can only act by its agents, it should be deemed to be always present whenever such agents perform any act in its behalf, in the course of their employment. From this refinement the inference is deduced that the principal, in legal contemplation, being always present, actually directs every act which the agent does, and is thus answerable for the direct trespass. This notion of the imaginary omnipresence of the corporate entity is a sheer novelty, well adapted to disturb and perplex the established system of forms of action, but unattended with any countervailing benefit. At the best, its adoption would but result in the substitution of one method of proceeding for another. But in a question touching merely the propriety of the use of a form

of action under particular circumstances, it appears to me that all discussion should end whenever it is shown that the practice, for a long period of time, has been considered as settled by the precedents. In *Sharrod* v. *Railway Company*, 4 *Excheq.* 585, this point, in precisely its present aspect, came under review in the Court of Exchequer, and it was there held, upon general principles, that trespass would not lie. The following authorities conclusively establish the same doctrine, *Campbell* v. *Phelps*, 17 *Mass.* 243; *Philadelphia, &c., Railway* v. *Wilt*, 4 *Whart.* 143; *Fox* v. *Northern Liberties*, 3 *W. & S.* 103; *Wright* v. *Wilcox*, 19 *Wend.* 343; *McManus* v. *Crickett*, 1 *East* 106.

My conclusion, therefore, is that this action has been misconceived.

This introduces the second question discussed on the argument. Can the proceedings be amended after verdict so as to adapt the form of remedy to the case made on the trial?

This inquiry draws into consideration, the clauses relating to amendments contained in the supplement to the practice act, passed in 1855. Anterior to that modification of the law, it could not have been pretended, that the defect existing in these proceedings was corrigible at this stage of the suit. At the time of the passage of our amendatory act, our legal system, in respect to the judicial power to correct errors in matters of form, was far below the level of that which was administered at Westminster, and of those which existed in most of the United States. We had, it is true, in one general statute of amendments and jeofails embodied, and with but slender improvement that long series of English acts which extended through over four centuries, from the reign of the third Edward to that of Queen Anne inclusive, thus rendering innocuous those omissions of technical phrases, misentries of clerks, and slips in words or syllables, which, at common law, had been so often fatal to the justice of the case. The barbarous rigor of the old maxim, "*qui cadit in syllaba, cadit in tota causa,*" was thus rather mitigated than superseded; and yet from the date of this general statute no comprehensive principle of improvement was at-

tempted to be applied to this branch of our jurisprudence, until the enactment of the supplement to the practice act, before referred to. Lord Tenterden's act, which had been passed about thirty years previously, and which nullifies the effect of a variance between the allegation and the proof, was incorporated into the 43d section of this supplement. The 46th section of the same supplement, is a substantial transcript of the 222d section of the Common Law Procedure act of 1852, and it is this clause which confers upon the courts authority to amend the proceedings. The language of the act itself will best express the extent, character, and purpose of the power thus given. It is as follows: "In order to prevent the failure of justice by reason of mistakes and objections of form, it shall be lawful for the court, or any judge thereof, at all times to amend all defects and errors in any proceeding in civil causes, whether there is anything in writing to amend by or not, and whether the defect or error be that of the party applying to amend or not; and all such amendments shall be made with or without costs, and upon such terms as the court or judge may seem fit; and all such amendments as may be necessary for the purpose of determining, in the existing suit, the real question in controversy between the parties, shall be so made."

It certainly cannot be denied, that the power thus granted is conferred in very comprehensive terms. It is, "all defects and errors," which the court are to possess the right to amend, and such amendments can be made "at all times." The only restriction on this grant of authority is that, which may be implied from the purpose for which it is to be used; that is, only such amendments are to be made as may be necessary to determine, in the existing suit, the real question in controversy between the parties.

Accepting the words of this clause of the statute in their full and ordinary signification, it seems to be undeniable that the court have the power to authorize the amendment, which is requisite to sustain the suit in the present case. The question in controversy between these parties was, whether the

defendants were liable for the value of the horses of the plain-tiff, killed by the impact of the locomotive. From the nature of the transaction, both parties must have known that the only real question to be decided was, whether the accident was occasioned by the carelessness of the agents in charge of the train. If the declaration had been in case, charging such carelessness, it would have given no information to the de-fendants which they did not actually possess. It is not pre-tended, that there was any surprise by reason of the discord-ance between the style of action and the facts proved. In point of fact, the suit has been tried, in all respects, as though the record was correct and the suit was in case. Under these circumstances it is clear that the objection is purely formal, and on this account, it appears to me, it ought not to prevail. In permitting this action of trespass to be trans-muted into the form of one in case, we merely sanction, in the language of the statute, " such amendment as may be necessary for the purpose of determining, in the existing suit, the real question in controversy between the parties."

In my opinion this act should be liberally construed. It is highly remedial in its nature, itself declaring, that its aim is to prevent the failure of justice, by reason of mistakes and objections of form. The defect it is designed to remove has long been, very justly, the opprobrium of the law. The end of all legal proceedings is justice, and forms are the mere means to that end. It is not intended, in the slightest respect, to disparage that system of practice and pleading which has, undoubtedly for many ages, been a most important auxiliary to the due administration of the law. It is conceded, that it is difficult to overestimate the value of methods of formal proceeding which, in their application to the most complicated affairs, will educe on the record a single issue, stripped of all unnecessary circumstances, possessed of known legal incidents and qualities, and readily intelligible to the parties, and to those whose duty it is judicially to decide it. But as the most vigilant practitioners will sometimes overlook a rule of practice, and the most learned of counsel will occasionally

misapply legal principles, all experience teaches that forms will, at times, tend rather to frustrate than subserve the purpose for which they were designed; and hence the necessity of a remedial control by the court. It seems to me, it was the evident intention of the legislature in conferring the power in question, to provide not only that the forms of proceeding should not prevent a fair trial of the real matter in controversy, but also that such forms should not annul the result of such trial. In my opinion it should be held, that every error in form, no matter how radical it may be, should be corrected in all civil causes at any stage of the suit, whenever such correction becomes necessary to enable the parties to try the matter in dispute which they contemplated to try, or to sustain the decision resulting from such trial.

It was in this spirit that this act was applied in the case of *Gear* v. *City of Hoboken*, 3 *Dutcher* 265. The question was whether an amendment was proper which the judge, at the circuit, had allowed. The suit was to recover the salary of a policeman. The declaration contained but a single count for work and labor, and the evidence showed that the plaintiff had been paid for all the services actually rendered by him, his real cause of action arising out of the breach of a special agreement on the part of the defendants, employing him as a policeman for a definite period. The amendment objected to, consisted in the introduction of a statement of this agreement on the record. It is clear that in a technical view, a suit based on a claim for work and labor actually rendered, was quite a different thing from the right growing out of a particular agreement to pay a salary for a definite period, during which no services were, in point of fact, performed. This court, however, did not adopt this narrow view, but held the alteration of the pleadings proper, and declared that the power of amendment extended to the introduction of matters, which the parties hoped and intended to try in the cause, and was not to be limited to matters within the issue upon the record.

In the English courts, the adjudications display a similar

bent. Great liberality was manifested in the interpretation and application of Lord Tenterden's act, and, accordingly, it was repeatedly adjudged that the true test of the propriety of any given amendment was whether, by its introduction, the original cause of action or ground or title of defence, was adhered to. If such proved to be the case the pleadings were amendable; but if, on the contrary, a new and distinct cause of action or matter of defence supervened, then such amendment was to be regarded as inadmissible. *Smith* v. *Knowelden*, 2 *M. & G.* 561; *Jenkins* v. *Phillips*, 9 *C. & P.* 766; *Foster* v. *Pointer*, 9 *C. & P.* 718; *Mayor, &c., of Carmarthen* v. *Lewis*, 6 *C. & P.* 608; *Hanbury* v. *Ella*, 1 *Ad. & El.* 61.

In *Billing* v. *Flight*, 6 *Taunt.* 419, the amendment applied for was similar in character to the one proposed in the present case. An action of *assumpsit* had been brought and subsequently a bill in chancery, founded on such suit, was exhibited by force of a statute which was supposed to authorize such proceeding, and to that bill the defendant objected that the discovery was given only in actions of debt. In avoidance of this difficulty, a motion was made in the Court of Common Pleas, in which the action of *assumpsit* was pending, to change it into an action of debt, and this motion was resisted on the ground that the proceedings had gone too far, the plaintiff being under a peremptory rule to try the cause at the next term. But the motion prevailed, and the amendment was made, the court saying " the amendment would give no new cause of action; it is to be made by altering a few words in the beginning and a few words in the end of the declaration, and we think that the amendment may be made."

So also in *Leigh* v. *Baker*, 2 *C. B.* 367, after judgment and execution, the frame work of the suit and the pleadings were permitted to be radically altered. And in *Storer* v. *Gordon*, 2 *Chit. R.* 27, in which, after trial and verdict for the plaintiff, the defendant was allowed to amend his pleas and have a new trial, one of the judges referred to an unreported case, in which the whole record was remodeled.

The following cases will likewise be found to be illustrative of the tendency of the judicial mind to sanction amendments at any stage of the proceedings, when they become necessary to effect the ends of justice. *Wilkinson* v. *Sharland*, 11 *Excheq.* 33 ; *Carpenter* v. *Parker*, 3 *C. B.* 205 ; *Gibson* v. *Varley*, 7 *Ellis & Black.* 55 ; *Gayler* v. *Farrant*, 4 *Bing. N. C.* 286.

In order to avoid misconstruction, it is proper to remark, that on the present occasion, it is not intended to express any opinion on the question which has been somewhat mooted, but not definitively settled in the English courts, *viz.*, whether the action of the judge holding the trial, either in allowing or refusing an amendment, is the subject of review in the superior court by writ of error. That point will receive due consideration when it shall arise.

If, therefore, there was no other objectionable circumstance in this case but the one above considered, in my opinion the verdict ought not to be disturbed; but the counsel of the defendants have raised a second objection, which touches closely the entire merits of the case.

It appeared at the trial that the horses in question had escaped from the close of the plaintiff and had wandered on to the railroad track of the defendants, in which latter place they were killed ; and it is insisted that, as the animals were trespassing at the time of the accident, this action for occasioning their destruction by neglect cannot be maintained.

This position seems to me well taken. That the owner of cattle must keep them from escaping on to the lands of others, is a principle of law which is almost universally admitted. It has received the express sanction of this court. *Chambers* v. *Matthews*, 3 *Harr.* 369. I shall assume therefore as incontestable, that at the time of the occurrence the horses, whose loss forms the ground of this action, were, in the eye of the law, trespassers on the defendants' land. Another well settled rule of law entering into the discussion is, that an action will not lie in favor of a party, whose own

wrong has materially contributed to the production of the damage complained of.

Now upon these data, it appears to me impossible to arrive at any conclusion which will support this suit. If legal care over the horses which were killed, was not exercised by the plaintiff, and the absence of such care contributed, in a substantial manner, to occasion his loss, he cannot uphold his present claim. Generally, the term, care, bears altogether a relative signification, being, as a legal subject, dependent upon circumstances. In many cases it may be difficult to define the precise standard of that care, which is requisite to repel the charge of legal negligence; but in the case of the owner of cattle which escape into the land of another, the law itself has clearly established its own criterion. The degree of care exacted in this class of cases is, that it shall be so great that the cattle shall not escape and go upon the land of another. Anything short of this successful vigilance is legal negligence, and the owner of the errant cattle, no matter what his precautions in point of fact may have been, is unavoidably a trespasser, and is liable to be sued as such.

If the defendants had brought an action against the plaintiff for the invasion of their track by his horses, on the occasion in question, it would have afforded no defence to such suit for the plaintiff to have shown that his field, from which they escaped, was well fenced and that the animals had been guarded with the utmost watchfulness. The invincible answer to such plea would have been a reference to the inexorable rule of law, which required him to keep his cattle off the land of another. It seems to me impossible to hold that the plaintiff has not fulfilled his legal duty, and yet that he is not legally culpable; that he is a trespasser in failing to keep his cattle off the land of the defendants, and yet although a trespasser, he is guilty of no neglect in the eye of the law. If he had wilfully driven his horses on to the railroad track, it hardly would have been pretended, that he could have claimed to be indemnified by the company, for his loss by reason of the negligence of their servant. But the introduc-

tion of the element of the plaintiff's volition in the causation of the wrong, does not alter its nature ; it is a trespass, whether it proceed from his want of legal care or from the direct action of his will. The trespass of the cattle then being in law imputable to the plaintiff as the result of his own negligence—and as without such trespass the damages would not have accrued—it seems to follow unavoidably that this suit will not lie. The plaintiff is forbidden by law, to ask to be compensated for a loss which, in fact, was the product of his own culpability.

And, again, on the other hand, I am unable to perceive how it can be predicated, on the facts above stated, that there was any duty incumbent on the defendants, which demanded the exercise of care towards the horses of the plaintiff. The defendants, at the time of the accident, were in the pursuit of their lawful business on their own land. Their agents were exercising all the circumspection requisite for the safety of the passengers in their charge, and for the protection of all persons in general, and of all property which retained its legal position. Did they owe any duty to individuals, by the law of the land, beyond this? Let it be admitted, as the plaintiff claims, that the engineer in the present case, saw the horses in time to stop the train. Was he under any legal obligation to do this in favor of a trespasser? It is not pretended that there was anything wilful in the act; but the complaint is that the defendants' agent, supposing the horses would pass off the track, continued his course with unabated speed. Was such agent, by such conduct, negligent in any legal sense? or, to put the case more correctly, were the defendants negligent in employing such servant? To my mind it would be most unreasonable, to push the doctrine of *respondeat superior* to such an extreme. The true theory is, that the principal undertakes that the servant he employs will be so far prudent and circumspect in the course of his employment, as to injure no one who preserves his legal situation with regard to such servant. But on the other hand, no one could reasonably be supposed to undertake, that his agent will be so discreet as to

fall into no negligence under all possible circumstances in which he may be placed, by the illegal acts of others. A employs B to fell timber in his woods; obviously it is an employment in which the most prudent man might engage the most careless; and if a trespasser should be injured by the carelessness of such employee in felling a tree, could it be rationally maintained that the employer was guilty of legal negligence in not anticipating the liability of a trespasser to injury? Most clearly, as I think, the master would be liable to no such imputation—and the principle which would exempt him must exempt the defendants in this case.

That an individual, himself a trespasser, cannot claim that the person so trespassed on, is legally bound to exercise towards him the ordinary care which he owes to all innocent parties, has been often decided. Thus in *Blyth* v. *Topham, Cro. Jac.* 158, which was an action for digging a pit in a common into which the plaintiff's mare, wrongfully "straying there," fell and was killed, it was held by the whole court that the action would not lie. *Bush* v. *Brainard*, 1 *Cow.* 78, rests on the same ground. The defendant had left maple syrup in buckets in an open shed on his own unclosed woodland, in which he was aware that the cows of the plaintiff were in the habit of browsing. The plaintiff's cow came in the night and drank of the syrup which caused her death. The resolution of the court was " that although the defendant was guilty of gross negligence," " the plaintiff, having no right to permit his cattle to go at large on the defendant's land," could not recover. A still stronger case, illustrative of the same rule, is that of *Howland* v. *Vincent*, 10 *Met.* 371 ; the defendant made an excavation on his own land within a foot or two of a public street, and used no precaution against the danger that pedestrians might incur of falling into it. The plaintiff passing in the night time, accidentally wandered over the line of the street, and fell into the excavation and was injured. The court decided these facts would not sustain an action.

The cases are numerous which have been settled on analogous principles. *Tarck* v. *Blackburn*, 4 *C. & P.* 297 ; *Black-*

*man* v. *Simmons*, 4 *C. & P.* 138; *Brock* v. *Copeland*, 1 *Esp.* 203; *Jordan* v. *Crump*, 8 *M. & W.* 782; *Vandegrift* v. *Redeker*, 2 *Zab.* 185.

Nor are we without cases in which the principle exemplified by the authorities just cited, has been applied to precisely the same juncture as that which has given rise to this controversy. In the suit of *Munger* v. *Tonawanda Railroad Company*, reported in 4 *Comstock* 349, the facts were almost identical with those alleged to exist in the present case. In that case, as this, the cattle of the plaintiff, without any fault on his part, had escaped on to the railroad track and had been there accidentally killed. The judgment was adverse to a recovery, and was placed on the general principle, that taking the strongest possible view in favor of the plaintiff, still it was evident that the damage sustained was the common product of the fault of both parties, and consequently was not actionable. To the same effect are the cases of *Terry* v. *New York C. R. R. Co.*, 2 *Barb.* 574; *Philadelphia & Reading R. R. Co.* v. *Hummel*, 8 *Wright* 375.

It further appears from the case, that the plaintiff was permitted, against the objection of the defendants, to prove at the trial the declarations of the engineer who had charge of the locomotive, with regard to the accident, and which declarations were made long after its occurrence.

This ruling, it seems to me, was plainly erroneous.

I think on both the grounds above indicated, a new trial ought to be granted.

New trial granted.

CITED in *Craft* v. *Smith*, 6 *Vroom* 306; *Joslin* v. *New Jersey Car Spring Co.*, 7 *Vroom* 147; *United States Watch Co.* v. *Learned*, 7 *Vroom* 430; *Farrier* v. *Schroeder*, 11 *Vroom* 603. See, also, *American Popular Life Ins. Co.* v. *Day*, 10 *Vroom* 8.