ANNIE C. KNIGHT, DEFENDANT IN ERROR, v. CAPE MAY SAND COMPANY, PLAINTIFF IN ERROR.

Argued March 11. 1912—Decided June 20, 1912.

1. An indebtedness, secured by two separate bonds and warrants of attorney, and subsequently further secured by the same obligor by its bond and mortgage for the aggregate sum of the two separate bonds, payable in one year and containing the usual interest, tax and insurance clauses, did not thereby lose its original identity but remained the same debt, and therefore the bond and mortgage are within the operation of section 2 of the act of March 23d, 1881 (*Gen. Stat.*, *p.* 2112), which reads: "That in all cases where a bond and mortgage has or may hereafter be given for the same debt, all proceedings to collect said debt shall be first to foreclose the mortgage.

2. In such a case the holder of the bond and mortgage is under a legal duty to first foreclose the mortgage, and therefore the judgments entered upon the separate bonds will be set aside.

3. Following *Hames* v. *Stiles*, 2 *Vroom* 494; *Defiance Fruit Co.* v. *Fox*, 47 *Id.* 482, and *McAdams* v. *Mundy*, 50 *Id.* 480, a writ of error was the proper remedy to review the action of the Supreme Court in discharging the rule to show cause.

4. A judgment by confession may be reviewed at the instance of a party to the judgment record where the legality of the right to enter judgment is involved.

On error to the Supreme Court, whose opinion is reported in 53 *Vroom* 16.

For the plaintiff in error, *Grey & Archer.*

For the defendant in error, *Charles R. Stevenson* and *McCarter & English.*

The opinion of the court was delivered by

KALISCH, J. Two judgments, by confession, were entered in the Supreme Court, in favor of the plaintiff and against the defendant, on bonds and warrants of attorney. The total amount of those judgments is $25,888.98, which is exactly the sum of the amounts secured by the two bonds referred to.

The defendant sued out a writ of error on each judgment which brings under review the action of the Supreme Court in discharging a rule to show cause granted by it in each case, upon the application of the Cape May Sand Company, the defendant, why the said judgments entered against it, by Annie C. Knight, the plaintiff, should not be vacated and the proceedings thereon set aside. The facts, which appeared before the Supreme Court, and which constituted the basis of its final action in discharging the rule, are succinctly and accurately stated by Mr. Justice Garrison, who delivered the opinion of that court, as follows:

"On May 20th, 1909, the Cape May Sand Company executed its bond with warrant of attorney to Annie C. Knight, conditioned for the payment of $18,698.03.

"On the same day the same obligor executed a like bond to J. Henry Edmunds, conditioned for the payment of $7,190.95, which bond was forthwith assigned by said Edmunds to Annie C. Knight.

"These bonds were due at once and contained no other obligation than the payment of their principal sums, which aggregated $25,888.98. Later, on the same day, the same obligor executed to Annie C. Knight its bond, conditioned for the payment of $25,888.98 in one year, with interest, payable semi-annually, with a provision that upon a default of thirty days in the payment of such interest the principal should be payable immediately, and a further obligation by the obligor to pay all taxes, with a provision that upon a default thereof for ninety days the principal should be due immediately.

"For the better securing of the debt evidenced by this bond the obligor executed to the obligee a chattel and real estate mortgage which recited said bond and the obligations contained in it, and also further bound the mortgagor to carry insurance to the full amount of the debt secured by said bond, to assign the policy to the mortgagee, and in default thereof the expense of so doing to be incurred by the mortgagee and added to the principal debt of the bond.

"On January 30th, 1911, judgment by virtue of the warrant of attorney was entered by Annie C. Knight on her bond

conditioned for the payment of $18,698.03, and also on the Edmunds bond for $7,190.95, which had been assigned to her.

"The defendant in each of these judgments, *i. e.,* the Cape May Sand Company, thereupon obtained a rule to show cause why these judgments should not be vacated, the contention of the defendant being that the judgments were entered in violation of the provision of section 2 of the act of March 23d, 1881 (*Gen. Stat., p.* 2112), which reads: 'That in all cases where a bond and mortgage has or may hereafter be given for the same debt, all proceedings to collect said debt shall be *first* to foreclose the mortgage.'"

The same questions are involved under both writs, and, for convenience, may be considered together. Before entering upon a consideration of the main question involved in the case, it becomes necessary to dispose of two preliminary questions raised by the plaintiff, which not only go to the root of the procedure, but vitally affect the defendant's right to any relief. The first contention of the plaintiff is that a writ of error will not lie to review the discharging of a rule to show cause. While the general legal rule is that a writ of error will not lie to review the granting or discharging of a rule to show cause, it has always been confined to cases where the action of the court was founded solely upon the exercise of its discretionary power, but not to a case where the effect of the granting or discharging of the rule is dispositive of the entire case—in that, its action is tantamount to the rendering of a final judgment.

The mere fact that the proceeding was by a rule to show cause does not and cannot affect the real function of the writ of error, that is, to bring the judgment record under review. The rule to show cause was simply an orderly procedure by which to bring to the knowledge of the court circumstances and facts under which the judgment was entered. The same object could have been attained by an application to the court to vacate the judgment, without an intervening rule to show cause. It is clear that if there was a defect on the face of the judgment record and an application had been made to vacate it and the court had in the first instance granted a rule

to show cause, and subsequently either discharged or made the rule absolute, the action of the court could not have operated to prevent the party prejudiced by such ruling to have the validity of such judgment brought under review by writ of error. And where the invalidity of the judgment can only be made to appear by matters *dehors* the record, as in the case *sub judice,* no different rule is logically applicable.

The general doctrine governing this subject is luminously stated by Chief Justice Beasley in *Eames* v. *Stiles,* 2 *Vroom* 494, in delivering the opinion of this court, as follows: "The only requisites are, that the decision of the inferior court is final, and has proceeded from a matter not resting in discretion. It is to be understood, however, that the term final is here used in the sense of the common law rule applicable to writs of error. The decisions must have settled definitely in the suit or proceeding the rights of the parties. The rule, as established, appears simply to have removed the requisites of the coincidence of the proceedings with the course of the common law; the other tests of the common law still obtain. What are matters of discretion, and what is a final decision, are still to be decided by reference to the ancient system and the principles established in the decisions of the court." *Defiance Fruit Co.* v. *Fox,* 47 *Id.* 482; *McAdams* v. *Mundy,* 50 *Id.* 480.

We are, therefore, brought to the conclusion that upon the authority and reasoning of the cases referred to the writs of error were properly sued out.

But, it is further urged, by the defendant, that the writs of error should be dismissed, because the judgments being by confession are not reviewable, on a writ of error, at the instance of one of the parties to the judgment. This theory is untenable.

In *Clapp* v. *Ely,* 3 *Dutcher* 555, a judgment by confession was reviewed at the instance of a creditor. The eminent counsel who were engaged in the case did not question the right. In *Parker* v. *Washoe Manufacturing Co.,* 20 *Vroom* 465, this court, on a writ of error, reversed the action of the Supreme Court in vacating a confessed judgment, by a cor-

poration, because the authority of its president to execute the papers was not shown, and upheld the confessed judgment on the ground that the court below had not considered the probative force of the corporate seal.

Here, it is to be observed that the writ was sued out for the benefit of a party to the record. Surely, if a creditor may be heard as to a matter involving the legality of the right to enter judgment, there seems to be no valid reason why a party to the record may not.

We now approach the consideration of the action of the Supreme Court in refusing to vacate the confessed judgments. The refusal of the Supreme Court to vacate the judgment is based upon the ground that "the aggregate sum of the two judgments and the debt to secure which the mortgage was given were not identical in any strict sense," and that therefore there was no legal barrier in the way of the plaintiff's taking action upon her bonds as at common law.

We agree with the Supreme Court that the statute which provides: "That in all cases where a bond and mortgage has or may hereafter be given for the same debt, all proceedings to collect said debt shall be first to foreclose the mortgage," must be strictly construed, as it is, as is said by Chief Justice Beasley, "in derogation of the common law force inherent in the bond and mortgage."

It was not intended, however, that the strictness with which this statute should be construed should attain to that degree as to destroy its purport and efficacy. The statute was enacted to counteract a prevailing evil which then existed and which was very oppressive to mortgage debtors.

Its palpable object is to prevent an obligee of a bond from suing thereon, until he shall have first foreclosed the mortgage, which has been given as collateral security for the payment of the bond. Before the passage of the act the mortgagee could foreclose his mortgage and bring his action on the bond at the same time, if he saw fit, and thus harass the mortgage debtor and put him to needless expense and costs.

It was at such oppressive proceedings that the statute aimed. It would follow, therefore, that in order to effectuate

the policy of the law, the strictness of construction required to be given to the statute should be within the bounds of a liberal sense and not an illiberal one.

The aggregate sum of the two bonds held by the plaintiff was $25,888.98. For this sum the defendant was indebted to the plaintiff. And it was to secure this sum that the defendant gave its bond and mortgage payable in one year, with interest payable semi-annually, with a provision that upon a default of thirty days in the payment of such interest and with such other provisions regarding the payment of taxes and insurance as are usually contained in such instruments.

The view taken by the Supreme Court is that the debt represented by the aggregate sum of the two judgments and the debt to secure which the mortgage was given were not identical in the strict sense of the statute, because, though the mortgage seemed a debt of like amount which was owing from the defendant to the plaintiff, it was with the addition of a year's interest, and because its due day was not like that of the separate bonds and was uncertain, being contingent upon defaults by the obligor in the payment of interest or taxes; and because the amount secured was rendered uncertain, not only by reason of such default clauses, but also because it was liable to be swelled by the cost of insurance which, in case of default, was to be added to the principal debt of the bond. This is altogether too narrow a view of the effect of the transaction and of the spirit of the statute. The loaning of money on bond and mortgage possesses no different features from those presented by the transaction between the plaintiff and defendant. The tax and insurance clauses are usual in bonds and mortgages. They are for the benefit of the mortgagee and aid in securing and protecting the indebtedness. These incidents do not change the character of the debt secured. The debt remains the same, however it may be surrounded with clauses and provisions for its security and payment.

Now, it appeared that on May 20th, 1909, the defendant owed the plaintiff the sum of $18,698.03, for which the defendant executed its bond and warrant of attorney to the

plaintiff to secure the payment of such debt. On the same day the defendant executed a like bond to J. Henry Edmunds, to whom it owed $7,190.95, which bond was forthwith assigned by him to the plaintiff. The legal effect of this transaction was to merge the two debts into a single indebtedness of $25,888.98, as owing from the defendant to the plaintiff. This indebtedness was secured by bonds and warrants of attorney. The time for the payment of this indebtedness was by consent of creditor and debtor extended for one year, and, as further security for the payment of this same indebtedness, the bond and mortgage were given. In a strict sense, it was the identical debt that had been secured by the separate bonds and warrants of attorney. The fact that the plaintiff extended the time of the payment thereof for one year and accepted a bond and mortgage, which represented the aggregate sum of the separate bonds, plus one year's interest to be paid thereon, did not thereby cause the debt to lose any of its original identity, but it still remained the same debt, within the meaning of the statute, that had been originally owing to the plaintiff from the defendant and which had been secured by the two separate bonds and which was further secured and finally represented by the bond and mortgage.

This leads to the result that the judgment of the Supreme Court in each case, discharging the rule to show cause, will be reversed, and the judgments under review be set aside.

*For affirmance*—MINTURN, VROOM, JJ. 2.

*For reversal*—THE CHIEF JUSTICE, SWAYZE, PARKER, BERGEN, VOORHEES, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, TREACY, JJ. 11.