70 N.J. Super. 46 (1961)
174 A.2d 742
JOSEPH McCLOSKEY, PLAINTIFF-APPELLANT,
v.
M.P.J. CO., A CORPORATION OF NEW JERSEY, ET AL., DEFENDANTS, AND JOHN F. O'NEILL AND JOHN M. CULLERTON, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted October 16, 1961.
Decided October 26, 1961.
*48 Before Judges GOLDMANN, FOLEY and LEWIS.
Mr. Charles S. Gaines, attorney for appellant.
Messrs. Mayer and Mayer, attorneys for respondent John F. O'Neill.
Messrs. Koehler, Augenblick & Freedman, attorneys for respondent John M. Cullerton.
The opinion of the court was delivered by LEWIS, J.A.D.
Plaintiff, Joseph McCloskey appeals from a final judgment of the Superior Court, Chancery Division, Essex County, determining that a collateral bond of defendants John F. O'Neill and John M. Cullerton was governed by N.J.S. 2A:50-2 and that suit thereon, prior to a foreclosure of the mortgage security, was premature. The single issue on this appeal is the application of the statute to said bond obligation created under the following circumstances:
The capital stock of M.P.J. Co. and Commercial Construction Co., New Jersey corporations, was held by McCloskey (50%), O'Neill (25%), and Cullerton (25%). Personal differences as to the operation of the companies were resolved by McCloskey's selling his stock interest in both corporations to the remaining stockholders, O'Neill and Cullerton. Plaintiff had a total of "$70,000 or in excess of $70,000" invested in the two companies. The purchase price for his stock interest was fixed at $70,255, evidenced and secured by a $27,255 bond and mortgage of the Commercial Construction Co. and a $43,000 bond and mortgage of the M.P.J. Co. These mortgages were to encumber real estate holdings of the respective companies. Additionally, as part of the security, the individual stockholders O'Neill and Cullerton, to whom McCloskey sold his stock, were required to give their personal bond in the amount of $7,500. A provision of this instrument reads:
*49 "This bond is given as collateral security to two bonds this day executed by M.P.J. Co., a New Jersey corporation and Commercial Construction Co., a New Jersey corporation to the Obligee in the amount of $70,225.00. In the event default is made in any of the payments due on said bond given by said M.P.J. Co. and Commercial Construction Co., and if said default continues for thirty (30) days, then the amount of this bond shall immediately become due and payable."
All documents were dated and delivered on April 23, 1959 when settlement between the parties was consummated. The bond and mortgage of the Commercial Construction Co. has since been paid and is not directly involved in the pending litigation.
Plaintiff instituted proceedings to foreclose the mortgage of the M.P.J. Co., reciting in his amended complaint the mortgage obligation of $43,000 and a default for a period of more than 30 days in the payment of a quarter-annual installment of taxes in the amount of $227.70. Plaintiff demanded, inter alia, judgment "adjudging that said lands be sold according to law to satisfy the amount due the plaintiff," and in a second count demanded judgment for possession and damages for mesne profits. His amended complaint also contained a separate cause of action respecting the bond of O'Neill and Cullerton, and a demand for judgment in the sum of $7,500, together with interest and costs.
There is a paragraph in the mortgage which reads: "This mortgage is also given to secure a bond collateral to the aforesaid bond in the amount of $7,500.00 executed by John F. O'Neill and John C. Cullerton." We observe that plaintiff did not recite nor refer to this significant provision either in his amended complaint in the foreclosure action or in the statement of facts in his brief and appendix submitted to this court. It does appear, however, in the excerpt from the mortgage printed in the appendix.
The trial judge, after reception of the evidence and argument of counsel, ordered and adjudged a sheriff's sale of the mortgaged premises, and a dismissal of the second count seeking mesne profits. He then, in the judgment, provided:
*50 "As to the Second Cause of Action, it being determined by the Court that the bond in the sum of $7500.00 made and executed by the defendants, John F. O'Neill and John M. Cullerton, is governed by N.J.S.A. 2A:50-2, which requires a prior foreclosure of the mortgage set forth in the first cause of action, and, therefore, the suit upon the said bond is prematurely brought and may only be maintained in the event of a deficiency in the foreclosure sale; it is thereupon
Ordered and Adjudged, that judgment be entered in favor of the defendants, John F. O'Neill and John M. Cullerton, on the second cause of action, but without prejudice and without costs."
It is from this final judgment on the second cause of action that plaintiff appeals, contending that the cited statute does not apply to the bond of the individual defendants because (1) it represents an absolute guarantee, and (2) it was not given for the same debt as was the corporate bond and mortgage.
The portion of N.J.S. 2A:50-2 which reads: "Where both a bond and a mortgage have been given for the same debt, all proceedings to collect the debt shall be: First, a foreclosure of the mortgage; * * *" is substantially the same language as that in the original act, L. 1880, c. 170, p. 255, as amended L. 1881, c. 147, p. 184. For an illuminative discussion of this legislation, its history and application, see Tischler, "Mortgagor's Liability for Mortgage Deficiency," 58 N.J.L.J. 121 (1935). The legislative policy underlying the statute has been repeatedly recognized and enforced by our courts. The statute is in derogation of the common law and should be strictly construed. Callan v. Bodine, 81 N.J.L. 240, 243 (Sup. Ct. 1911). A promissory note secured by a mortgage has been held not to be within the purview of the statute. Asbury Park & Ocean Grove Bank v. Giordano, 3 N.J. Misc. 555, 129 A. 202 (Sup. Ct. 1925), affirmed per curiam 103 N.J.L. 171 (E. & A. 1926). But, see Wildwood Title & Trust Co. v. Geisenhoner, 11 N.J. Misc. 871, 168 A. 751 (Sup. Ct. 1933), where a promissory note together with a bond and mortgage was executed to the plaintiff for the same debt. *51 The court in that case held the giving of the note was part of the bond and mortgage transaction and that the statute must not be construed so as to disregard and nullify its evident object and purpose; accordingly, foreclosure of the mortgage was a prerequisite to instituting suit on the note.
In Knight v. Cape May Sand Co., 83 N.J.L. 597 (E. & A. 1912), the Supreme Court had refused to vacate two confessed judgments based upon an indebtedness evidenced by two separate bonds and warrants of attorney. These instruments had been further secured by the same obligor by its bond and mortgage for the aggregate sum of the two separate bonds. It was argued that "the aggregate sum of the two judgments and the debt to secure which the mortgage was given were not identical in any strict sense," and that, therefore, there was no legal barrier to plaintiff's taking action upon her bonds as at common law without first foreclosing the mortgage. On review by the Court of Errors and Appeals, Justice Kalisch speaking for that court, held: "This is altogether too narrow a view of the effect of the transaction and of the spirit of the statute." After acknowledging that the statute was in derogation of the common law, he said (83 N.J.L., at p. 601):
"It was not intended, however, that the strictness with which this statute should be construed should attain to that degree as to destroy its purport and efficacy. The statute was enacted to counteract a prevailing evil which then existed and which was very oppressive to mortgage debtors."
The judgments were set aside. To the same effect, Van Aken v. Tice, 60 N.J.L. 377 (Sup. Ct. 1897); cf. Ledden v. Ehnes, 22 N.J. 501 (1956).
Plaintiff places reliance upon certain authorities which, when analyzed, reveal not only factual premises which are distinguishable but, also, legal interpretations which accentuate the relevancy of our foreclosure statute to the collateral bond now in question. In Pfeiffer v. Crossley, 91 N.J.L. 433 (Sup. Ct. 1918), affirmed per curiam 92 N.J.L. *52 638 (E. & A. 1919), defendant assigned a bond and mortgage to plaintiff and, as a part consideration for the transaction, executed and delivered a written agreement whereby he guaranteed "the payment of the face of the said mortgage." The court declared this agreement to be an absolute guarantee of payment; "hence plaintiff was under no legal obligation to foreclose the mortgage, but was entitled to hold the guarantor immediately upon a default." A similar holding was reached in Chodosh v. Schlesinger, 119 N.J.L. 405 (E. & A. 1938). There, the Winber Realty Company acquired the mortgaged premises subject to the encumbrance, and together with two individuals entered into an agreement whereby they, jointly and severally, covenanted to pay the bond and mortgage and interest thereon. The consideration for the covenant was an extension of the mortgage due date. The court found a "breach of the independent primary covenants." Likewise, in the case of Gaffney v. William E. Wright & Sons Co., 112 N.J.L. 191 (E. & A. 1934), the liability of the defendants was predicated upon an extension agreement containing independent primary covenants. In all of these cases, there was an independent, separable and primary obligation, created subsequent to the original bond and mortgage transaction and which was not intended to be secured by the mortgage. Moreover, these cases antedated the legislative enactment of 1947 (L. 1947, c. 381, § 1, p. 1213) declaring that:
"No action to enforce an agreement, express or implied, to assume the payment of any mortgage, or of any bond secured by a mortgage, shall be maintained against a person making such agreement unless the mortgage shall have been first foreclosed, * * *." N.J.S. 2A:50-22.
The identity of the debt, rather than the instrument by which it is evidenced, is the test as to whether the statute applies. Taylor v. Van Nimwegen, 86 N.J.L. 80 (Sup. Ct. 1914). See also Lawyers & Home-Makers B. & L. Ass'n v. Kohn, 117 N.J.L. 238 (E. & A. 1936); Knight v. Cape *53 May Sand Co., supra. The distinguishing features between contracts of guaranty and indemnity were discussed at length by Justice Heher in Westville Land Co. v. Handle, 112 N.J.L. 447 (Sup. Ct. 1933). Cf. George M. Brewster & Son v. Catalytic Construction Co., 17 N.J. 20, 27 (1954).
In the instant case, the corporate bonds and mortgages and the bond of the individuals emanated from a single transaction  the sale of corporate stock and settlement therefor at an agreed price payable in the future and secured by mortgages. All documents were dated the same day and were executed and delivered as part of a contemporaneous closing. There was a single purchase price. The several instruments evidencing the debt and the pledged collateral were all inextricably part and parcel of the "package" settlement. The $7,500 personal bond was as much an integral part of the transaction as were the other forms of obligations. By its terms it was "given as collateral security" to the two corporate bonds aggregating $70,225, the total debt. The M.P.J. Co. mortgage of $43,000 specifically provided that it was "also given to secure a bond collateral to the aforesaid bond in the amount of $7,500.00 executed by John F. O'Neill and John C. Cullerton." For a definition of "collateral security," see Black's Law Dictionary (4th ed. 1951), pp. 327-328:
"A security given in addition to the direct security, and subordinate to it, intended to guaranty its validity or convertibility or insure its performance; so that if the direct security fails, the creditor may fall back on the collateral security."
It was conceded by plaintiff that suit could not be maintained on the corporate bond unless a deficiency be established after foreclosure; and, he states in his brief:
"The individuals limited their liability so that if a deficiency of more than $7500.00 was established, they would not be required to pay more than the $7500.00; whereas, the corporation on its bond would be required to pay the entire deficiency." (Emphasis supplied) *54 The words "if a deficiency" must contemplate a foreclosure and sale, a sine qua non of plaintiff's right to establish a deficiency. Suits for deficiency are not a favored policy of our courts. Henderson v. Weber, 20 N.J. Misc. 67, 24 A.2d 508 (Cir. Ct. 1942). The United States Supreme Court has indicated that "mortgagees are constitutionally entitled to no more than [one] payment." Ibid. See Gelfert v. National City Bank of New York, 313 U.S. 221, 236, 61 S.Ct. 898, 85 L.Ed. 1299 (1941); Honeyman v. Jacobs, 306 U.S. 539, 59 S.Ct. 702, 83 L.Ed. 972 (1939).
The $43,000 mortgage debt had been substantially reduced (the principal and interest payable as of December 6, 1960 was $17,193.82) and, if a foreclosure sale should produce satisfaction of the balance due, the liability of the individual obligors on their personal bond will be terminated; otherwise, the obligee would have a remedy for deficiency on his corporate and individual bonds as provided by law.
The judgment is affirmed.