395 F.2d 80
 DEVELOPERS SMALL BUSINESS INVESTMENT CORPORATION, a
corporation, Appellant,
v.
Robert G. HOECKLE, Blanche Bateman, Jean N. Bell, Surjit
Singh, H. Linn Hinkle, Louis Bonomi and Edmond V.
Bayer, Appellees.
 No. 21849.
 United States Court of Appeals Ninth Circuit.
 May 13, 1968.
 
 Kurt W. Melchior (argued), David Self, of Severson, Werson, Berke & Bull, San Francisco, Cal., for appellant.
 Robert A. Thompson (argued), of Gottesman & Thompson, San Francisco, Cal., James B. McKenney, of Pendergrass, McKenney, Perry & Ward, San Rafael, Cal., for appellees.
 Before POPE, BROWNING and CARTER, Circuit Judges.
 JAMES M. CARTER, Circuit Judge.
 
 
 1
 This appeal involves an action on a guaranty executed by the appellees individually, (hereafter 'Appellees'). This action was grounded for jurisdiction on diversity of citizenship under 28 U.S.C. 1332. This court's jurisdiction rests on 28 U.S.C. 1291.
 
 
 2
 Two questions are involved, (1) whether the law of New Jersey or California applies, and (2) whether under applicable law, the holder of a guaranty may enforce its obligation by an action on the guaranty without first exhausting its security under a deed of trust secured by a separate note also held by the holder of the guaranty, the obligation of the note being the obligation guaranteed.
 
 
 3
 The complaint by Developers Small Business Investment Corporation, a corporation, (hereafter 'S.B.I.C.'), alleged that pursuant to a loan agreement executed under the laws of the state of New Jersey, by S.B.I.C., and Pelican Hill Apartments, Inc., a California corporation, (hereafter 'pelican'), and dated August 15, 1965, Pelican made, executed and delivered a promissory note to S.B.I.C. The note was delivered on August 26, 1965, payable at Teaneck, New Jersey, and secured by a deed of trust on the Pelican Real Properties. S.B.I.C. is the owner and holder of the note.
 
 
 4
 Pursuant to the loan agreement, the appellees, (defendants below) and each of them made, executed and delivered a personal guaranty of the indebtedness represented by the promissory note to S.B.I.C., as an inducement to grant financial accommodations to Pelican. The appellees each jointly and severally and unconditionally guaranteed payment of the note.
 
 
 5
 The complaint was for money against the appellees, signers of the guaranty, in the sum of $89,500, plus interest and attorney's fees allegedly due and payable upon default of payment of installments of the note executed by Pelican.
 
 
 6
 No responsive pleading or answer was filed to the complaint, but appellees filed a motion to dismiss the action, pursuant to F.R.Civ.P. 12(b)(6), or in lieu thereof to quash a writ of attachment previously issued 'in that plaintiff (S.B.I.C.) has failed to exhaust the principal security for the obligation allegedly guaranteed by defendants as more clearly appears in the affidavit of Jean N. Bell, attached hereto.' The affidavit stated:
 
 
 7
 'The exact value of said real property is unknown to affiant, although that portion constituting a first deed of trust in favor of plaintiff is appraised by the Marin County Assessor as having a market value of $41,000.00.' (R. 22).
 
 
 8
 S.B.I.C. opposed the motion and contended that, (1) New Jersey law applied; (2) that under New Jersey law and also under California law, if it applied, it was unnecessary to exhaust other security for the promissory note before proceeding against the guarantors; (3) that exhaustion of other security would be an idle, vain and useless act; (4) that in any event failure to exhaust security would be, under the law of either state, an affirmative defense which must be raised by appellees and need not be alleged by S.B.I.C. in the complaint.
 
 
 9
 S.B.I.C. also filed an affidavit of its President, stating that a portion of the property, through a scrivener's oversight, was not covered by a prior deed of trust and refers to the claims of the holder of the prior deed of trust and its effect on S.B.I.C.'s second. The affidavit also stated that in affiant's expert opinion and in the opinion of attorneys for the holder of the prior deed of trust, the entire property involved in the transaction between S.B.I.C. and Pelican, was not worth the remaining unpaid balance to the prior trust deed holder, the senior encumbrancer; that any attempt to foreclose the security would be an idle and expensive act.
 
 
 10
 The district court on March 3, 1967, entered its memorandum and order finding that New Jersey law applied and plaintiff must exhaust its primary security before proceeding against the guarantors. The order concluded, 'Since it has not done so to date, this action should be dismissed. Accordingly, it is ordered that this action be and the same is hereby dismissed.'
 
 
 11
 The effect of dismissal under Rule 41(b) F.R.Civ.P.
 
 
 12
 We are met at the outset by the contention that the dismissal as entered under Rule 41(b) F.R.C.iv.P., is a dismissal with prejudice, thereby terminating all S.B.I.C.'s rights under the guaranty. Rule 41(b) concerning involuntary dismissal and its effect, states: 'Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.'
 
 
 13
 Even if the trial court was correct as to necessity to exhaust security, it should have permitted an amendment to allege exhaustion of security or the uselessness of such an act. Bonanno v. Thomas, 309 F.2d 320 (9 Cir. 1962). Nor does the failure of appellees to request leave in the district court to amend affect the problem. Bonanno v. Thomas, supra, and Sidebotham v. Robison, 216 F.2d 816, 826 (9 Cir. 1962).
 
 
 14
 Since affidavits were filed, there is also a question as to whether the court considered them and should have proceeded pursuant to Rule 56 F.R.Civ.P., that is treated the motion as one for summary judgment pursuant to the provisions of Rule 12(b). There is no express exclusion of the affidavits by the court in its memorandum and order but apparently it did not base its dismissal on the affidavits. The memorandum refers to the failure to exhaust security but the security was alleged in the complaint. In view of our disposition of the case, we need not consider whether the motion should have been treated as one for summary judgment.
 
 
 15
 The order of dismissal must be reversed for failure of the court to allow S.B.I.C. to amend, and instead adjudicating its rights on the guaranty by the dismissal with prejudice under Rule 41(b) F.R.Civ.P. But there is more to the case, and we should proceed with further determinations.
 
 Conflict of Law Rule
 
 16
 Both parties agree that in this diversity case, the district court is bound to follow the conflict of laws rule of the state in which the district court is located. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1949).
 
 
 17
 Section 1646 of California Civil Code provides * * * 'A contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.'
 
 
 18
 In determining the place of making, suretyship contracts differ from regular contracts since the creditor must accept the surety's guarantee, either by acting upon it and extending credit, or by communicating his acceptance to the surety. Skaggs-Stone, Inc. v. LaBatt, 182 Cal.App.2d 142, 5 Cal.Rptr. 882 (1960). This event clearly occurred in New Jersey.
 
 
 19
 Furthermore, the district court properly found that the California rule is that when the parties intend that the law of a certain state govern the contract, the intention is usually respected. Bernkrant v. Fowler, 55 Cal.2d 588, 12 Cal.Rptr. 266, 360 P.2d 906 (1961); Boole v. Union Marine Ins. Co., 52 Cal.App. 207, 198 P. 416 (1912); Ringling Bros.-Barnum & Bailey Combined Shows v. Olvera, 119 F.2d 584 (9 Cir. 1941).
 
 
 20
 The appellees were guarantors of the loan between S.B.I.C. and Pelican. The guarantors were named in the loan agreement in Sec. 4(c), which provided expressly that the note would be jointly and severally guaranteed by each of them. The loan agreement was signed in behalf of Pelican by Bell and Singh as President and Secretary of Pelican. The loan agreement specifically provides that 'It is understood and agreed by and between the parties hereto that the laws of New Jersey shall control the affect of the agreement and all documents herein referred to. * * *'.
 
 
 21
 The question is whether New Jersey law was intended to apply to the guaranty contract. We are of the opinion that it was so intended. A guaranty given to guarantee the execution of a contract becomes part of such contract, and to that contract the guarantors become parties the same as though they had actually made and executed the contract itself. Ryan v. Shannahan,209 Cal. 98, 285 P. 1045 (1930); Callan v. Empire State Surety Co., 20 Cal.App. 483, 129 P. 978 (1912); Harm v. Frasher, 181 Cal.App.2d 405, 5 Cal.Rptr. 367 (1960).
 
 
 22
 The 'contract' here is the note secured by the deed of trust and examined by Pelican. The guaranty, signed by all appellees, states they 'jointly and severally do hereby guarantee payment of the note, copy of which is attached hereto.'
 
 
 23
 Moreover, it can be inferred that appellees knew all about the transaction they were entering into, including the provision in the loan agreement that New Jersey law should apply and that the note attached to the signed guaranty had written on the upper right thereof, 'Teaneck, New Jersey, Aug. 26, 1965.'
 
 
 24
 We conclude that the guaranty contract is governed by New Jersey law. But we further conclude that both New Jersey and California law permit the maintenance of the action against the guarantors.
 
 New Jersey Law
 
 25
 The New Jersey case law clearly establishes the rule that in the case of an absolute guaranty of payment of the obligation of another, the party guaranteed may hold the guarantor without suing first on the primary obligation. United States Rubber Co. v. Champs Tires, Inc., 73 N.J.Super. 364, 180 A.2d 145 (1962); First Bank and Trust Company v. Siegel, 36 N.J.Super. 207, 115 A.2d 152 (1955); New York Credit Men's Ass'n. v. Rothenberg, 15 N.J.Misc. 738, 196 A. 372 (1937); Superior Finance Corp. v. John A. McCrane Motors, Inc., 116 N.J.L. 435, 184 A. 828 (1936); Pfeiffer v. Crossley, 91 N.J.L. 433, 103 A. 1000 (1918).
 
 
 26
 The district court improperly held that the instant case was within the purview of N.J.S. 2A:50-22, N.J.S.A., which provides:
 
 
 27
 'No action to enforce an agreement * * * to assume the payment of any mortgage, or of any bond secured by a mortgage, shall be maintained * * * unless the mortgage shall have been first foreclosed * * *'.
 
 
 28
 The district court concluded that the statute above quoted changed the older New Jersey rule. Such conclusion is not supported by the cases. The United States Rubber Co., case, supra, and the Siegel case, supra, were both handed down since the statute was enacted in 1951.
 
 
 29
 79-83 Thirteenth Ave., Ltd. v. De Marco, 44 N.J. 525, 210 A.2d 401 (1965), reached the Supreme Court of New Jersey after a full course treatment in the lower courts. In each instance the old distinction between a note and a bond was upheld. 79 N.J.Super. 47, 190 A.2d 391 (1963), trial court; 83 N.J.Super. 497, 200 A.2d 506 (1964), Appellate Division of the Superior or trial court; certification granted by the Supreme court 43 N.J. 271, 203 A.2d 720 (1964); and the decision of the Supreme court first cited.
 
 
 30
 The Supreme court was compelled to find that since N.J.S. 2A:50-2 to 11, and 22 to 28, N.J.S.A. speak precisely of a 'bond,' 'bond and mortgage' and 'action on the bond,' such provisions may not be utilized where the mortgage debt is evidenced by a 'note.'[1]
 
 The Court said:
 
 31
 'Second, these enactments, many adopted as long ago as 1880, have been uniformly construed by the courts and practically acted upon by the bar over a long course of years as inapplicable in situations where no bond is involved. * * *' (210 A.2d page 403). 'That this precision was deliberate is evidenced by the fact that a check of the legislative history of the various enactments shows that in the case of many * * * the bills as introduced were general in their language so as to be applicable to both bonds and notes, but were amended before passage to confine their effect to situations where bonds were given. So there can be no question but that these statutory sections, except for 2A:50-1, were not intended to apply where mortgage notes were utilized.' (210 A.2d page 405).
 
 
 32
 McCloskey v. M.P.J. Co., 70 N.J.Super. 46, 174 A.2d 742 (1961), a trial court decision relied on by appellees, is not contrary.
 
 
 33
 It is clear that the holder of a guaranty of payment is under no obligation to exhaust his remedies against the maker of the note. In the case of New York Credit Men's Ass'n. v. Rothenberg, supra, the court held that where a corporation's president guaranteed payment of the corporation's note, the president could be held liable immediately upon default. Suit on the note was not a condition precedent to recovery under the guaranty.[2]
 
 
 34
 The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 The reading of the New Jersey cases show what is meant by a 'bond.' It is an instrument agreeing to pay money, reciting it is secured by a mortgage on real property. It is equivalent to a California note secured by a trust deed (or mortgage)
 The word 'note' refers to a written obligation to pay money without reference therein to the security of a mortgage. It would thus include an agreement of guaranty. It is equivalent to a California note, unsecured or a California guaranty.
 The reason for the distinction and the two different rules is shown in Poultrymen's Service Corp. v. Brown, 77 N.J.Super. 198, 206-207, 185 A.2d 706, 710 (City Ct. 1962), where it is stated:
 'Unlike a bond, a note may be a negotiable instrument. * * * it need not make reference to the mortgage. It certainly does not follow that an instrument capable of physical separation from the mortgage and capable of negotiability from one person to another would carry with it all the terms, covenants and conditions of a mortgage to which there is no reference.'
 
 
 [2]
 Because New Jeresy law does apply to this case, it is unnecessary to fully discuss the California rule. The California Civil Code, 2787, abolished the distinction between surety and guaranty and made all surety statutes apply to guarantors as well as sureties. Section 2807, states that a surety is liable to the creditor immediately upon default and without demand or notice. The case law clearly establishes the rule that the liability of the guarantor of an unconditional guaranty is fixed when the principal obligation matures and is not predicated upon the exhaustion by the creditor of his remedies against the principal debtor. Bank of America Nat. Trust & Sav. Ass'n v. McRae, 81 Cal.App.2d 1, 183 P.2d 385 (1947); Ralston-Purina Co. v. Carter, 210 Cal.App.2d 372, 26 Cal.Rptr. 690 (1962); Cooke v. Mesmer, 164 Cal. 332, 334, 128 P. 917 (1912)
 The Civil Code, 2845, provides an exception to the McRae doctrine. When a demand is made on the creditor by the guarantor to proceed first against the principal debtor, the creditor must first proceed against the principal. Moffett v. Miller, 119 Cal.App.2d 712, 260 P.2d 215 (1953), unless an action is brought against both the principal and the guartor, Ralston-Purina Co. v. Carter, supra. But in the absence of a demand, the rule prevails that an action may be maintained on an absolute and unconditional guaranty without reference to any proceeding against the principal debtor. See 46 Cal.Jur.2d 274, 45.