LAURA A. SNYDER

v.

JOHN A. BLAIR et al.

1. In ascertaining the sum for which a decree for deficiency should be made, the sum for which the mortgaged premises were sold must, so long as the sale stands, be taken, as between the parties to the suit, as a conclusive test of the value of the mortgaged premises.

2. On such an inquiry, the court is not at liberty, in case the market value of the premises happens to exceed the sum realized at the sale, to deduct the market value and enter a decree only for the balance of the mortgage debt.

On petition, affidavits and order to show cause.

*Mr. Thomas N. McCarter*, for petitioners.

*Mr. James C. McDonald*, for complainant.

THE VICE-CHANCELLOR.

The principal object of the application now before the court is to have the decree for deficiency made in this cause so reduced, that the sum for which it stands shall represent, not the difference between the net proceeds of the mortgaged premises and the amount of the mortgage debt, but simply the difference between the market value of the mortgaged premises, at the time of the sale, and the mortgage debt. In other words, the petitioners insist that the court, in ascertaining the sum for which a decree for deficiency shall be made, may, in case the market value of the mortgaged premises is greater than the sum obtained for them at a judicial sale, disregard the test of value fixed by the sale, and deduct such sum from the mortgage debt, as it may, upon proofs, adjudge to be their value, and limit its decree for deficiency to the balance.

The following summary will give all the material facts: The petitioners are John A. Blair, David Young and Roderick Byington. Young and Byington, together with one Robert W.

Leslie, in December, 1872, purchased of William V. Snyder, a tract of land at Woodside, Essex county, for which they agreed to pay $19,875. On the conveyance of the land to them, they paid $6,875 in cash, and in payment of the balance assumed the payment of a mortgage, previously executed by Snyder on the land, for $13,000. Leslie subsequently conveyed his interest in the land to Blair, who assumed Leslie's liability for the mortgage debt. Snyder subsequently purchased the mortgage, and had it assigned to his wife (the complainant in this suit), who, at his instance, brought this suit to foreclose the equity of redemption in the mortgaged premises, by sale. The mortgaged premises were sold in December, 1879, under a final decree made in July, 1879, for $4,500, leaving a deficiency of over $10,000. The petitioners insist that at the time of the sale the mortgaged premises were worth at least $11,000, and that the court should, therefore, in ascertaining the deficiency for which Mrs. Snyder is entitled to a decree, deduct $11,000 from her mortgage debt, and enter a decree for the balance only.

In determining the question raised by this application, I shall regard Mr. Snyder as the complainant in this suit. That, I think, is his true position. He purchased the mortgage, and paid for it with his own money, ordered suit brought on it, and has since controlled the suit. By the agreement between Snyder and his grantees, they became principals in respect to the mortgage debt, and he their surety. By their assumption they became as effectually bound to him for the payment of the mortgage, in case the mortgaged premises were not sold for a sum sufficient to pay it, as though they had made a bond directly to him. No dispute is made as to their liability; the question is as to the extent of their liability.

The question presented is, in my judgment, entirely free from difficulty. This proposition seems to me to rest on authority which cannot be questioned, and to be also supported by the plainest considerations of justice. That sum for which property conveyed in pledge for the security of a debt is sold at judicial sale, must, so long as the sale stands, be taken, as between the parties to the suit, as a conclusive test of its value. This, as

14

I understand it, is the rule presented by our statute. The seventy-sixth section of the chancery act directs "that it shall be lawful for the chancellor, in any suit for the foreclosure or sale of mortgaged premises, to decree the payment of any excess of the mortgage debt, *above the net proceeds of sale*, by any of the parties to such suit who may be liable, either at law or in equity, for the payment of the same." *Rev. 118.* The same rule was established by the courts long prior to the adoption of any statute upon the subject. *Globe Insurance Co.* v. *Lansing, 5 Cow. 380; Lansing* v. *Goelet, 9 Cow. 346.* The opinion of Chancellor Jones, in the case last cited, contains a valuable summary of all the adjudications bearing upon the question made prior to 1826. The law, I think, must be considered so firmly settled as to be beyond alteration by the courts.

When a bond and mortgage are given for the same debt, the bond is the evidence of the debt, and the mortgage is merely a security. The creditor may always pursue his remedy on his bond, regardless of the security afforded by his mortgage. His contract does not require him to resort to his security first. Until his debt is paid or discharged, he is entitled to all the remedies afforded by the law for its collection. If he desires to have his pledge converted into money, by judicial sale, and the money applied in discharge of his debt, he must proceed by suit, and if the pledge is condemned to sale, the sale is made by the court. The court is really the vendor; the pledge is sold by its authority and under its process, and though the contract is, in form, with its officer, he acts merely as the agent of the court. For this reason the court exercises a more liberal supervision over such contracts than those of any other class. *McCahill* v. *Equitable Life Ins. Co., 11 C. E. Gr. 531; Hayes* v. *Stiger, 2 Stew. Eq. 196.* The court may compel a purchaser who purchases at a sale made under its process, to specifically perform his contract, by proceedings in attachment. *Silver* v. *Campbell, 10 C. E. Gr. 465; Bowne* v. *Ritter, 11 C. E. Gr. 456.* If the pledge is sold for a sum greater than is required to pay the liens to which it is subject, the surplus is paid to the pledgor; if for less than the amount due to the pledgee, it is the duty of the court, according

Snyder *v.* Blair.

to the well-established practice, to award him a decree for the deficiency. The price, however, realized at the sale, whether it be more or less than is required to pay the pledgor's debt, is the only known legal standard of value. The court cannot sell the pledge to the pledgee for one price, and make title to him for that price, and then, in adjusting the amount remaining due to him from his debtor, compel him to pay a much larger price. If such a thing could be done, it would amount to this: the court would nullify the sale so far as it affected the interests of the vendor, but compel the vendee to keep his part of the bargain, and to pay for the property a price he never agreed or consented to give. This court has no such power.

The soundness of the legal rule mainly relied on in support of this application is not open to discussion. It is this: that a surety is only entitled to recover of his principal to the extent that he is damnified. Re-imbursement is all that he can ask. If the creditor remits his debt, as a gratuity to the surety, the surety can recover nothing, for he has lost nothing. *Burge on Surety-ship 359.* So if the surety extinguishes the debt for less than the whole sum due, he can only recover what he actually pays. *Bonney* v. *Seely, 2 Wend. 481; Reed* v. *Norris, 2 Myl. & Cr. 362; Butcher* v. *Churchill, 14 Ves. 567.* It is unquestionable that all that the surety in this case is entitled to, is re-imbursement, but in ascertaining what sum will re-imburse him the net proceeds of sale must, for the reasons already stated, be taken as fixing unalterably the limit of deduction.

It is also true that a creditor who holds a pledge as security for his debt cannot have both his debt and the pledge. If a mortgagee, after obtaining a decree of strict foreclosure and taking possession, proceeds to collect his debt, the decree of foreclosure is *ipso facto* opened, and the debtor let in to redeem. *Osborne* v. *Tunis, 1 Dutch. 633, 651.* But when the pledge is converted into money by judicial sale, even if the creditor is the purchaser, it is not true that he has both debt and pledge. In that case the pledge is sold to pay the debt; the debt is satisfied to the extent of the money realized, but no further; the interest of both pledgee

and pledgor passes by the sale, and the purchaser stands in the right of a new title, founded upon the rights of both.

Nor did the purchase of the mortgaged premises by the surety, in this case, operate as an extinguishment of the debt. That is the effect of a purchase, by a mortgagee, of the equity of redemption in mortgaged premises, under a judgment at law, founded upon the same debt secured by his mortgage. In such case he purchases only the equity of redemption, and of course he purchases subject to such part of his mortgage debt as is not raised by the sale. Now, if in this condition of affairs, he were allowed to collect, out of other property of the mortgagor, such part of his debt as was not realized by the sale of the equity of redemption, he would get, not the equity of redemption, but the whole estate in the land, and the mortgagor would thus be compelled to pay the same debt twice. To prevent this injustice, it has been held that a sale of the equity of redemption, by the means already mentioned, operates as an extinguishment of such part of the mortgage debt as is not paid by the sale. *Tice* v. *Annin*, *2 Johns. Ch. 125* ; *Woodruff's Exrs.* v. *Black, Sax. 338; Hartshorne* v. *Hartshorne, 1 Gr. Ch. 349.* But it is obvious at a glance that it is not possible to apply this doctrine to the case under consideration. The two cases are so dissimilar in all their fundamental elements that it would be a waste of effort even to mention their prominent distinctions.

The petitioners are not entitled to any deduction from the mortgage debt beyond the net proceeds of sale.

The petitioners also ask that the sale may be set aside. They insist that a sale should never be allowed to stand when it appears that property worth $11,000 has been sold for $4,500. The sale was fairly conducted, and seems to have been regular in all respects. The petitioners were present, either in person or by counsel ; there is no pretence of accident, surprise or mistake ; there is no reason to suspect fraud or other evil practice ; the property, it appears, was sold for the largest price that could be obtained for it, and there is nothing now before the court which will justify even a hope that, if it were put up again, a better price could be obtained. Under these circumstances the court

may pity the petitioners in their misfortunes, but it is powerless to help them. But the purchaser consents that the sale may be set aside conditionally. Under this consent, an order will be made that if the petitioners shall, within twenty days, enter into a stipulation, with sureties to be approved by the court, that the mortgaged premises shall be sold at second sale, for at least $8,750, and shall also, within the same period, pay the costs and fees of the sale heretofore made, and the taxed costs of these proceedings, the sale shall be set aside and a new sale ordered, but if they fail to do so, within the time limited, their petition must be dismissed, with costs.