ALBERT DATZ and ANNA C. DATZ, his wife, complainants-respondents,

*v.*

WILLIAM J. BARRY et al., defendants-appellants.

[Submitted October 28th, 1933. Decided January 5th, 1934.]

*Mr. Harry H. Harris,* for the complainants-respondents.

*Messrs. Insley, Vreeland & Decker (Mr. Alfred R. Becker,* of counsel), for the defendants-appellants.

The opinion of the court was delivered by

CASE, J.

The bill of complaint in foreclosure alleged that Barry and his wife had executed the bond and the mortgage on January

30th, 1924, and had subsequently conveyed the lands to Onu-frow; that Onufrow, having meanwhile conveyed the lands out and later recovered them, conveyed the same, on August 23d, 1932, to one Fuller and that the mortgage had become due. Barry, brought in as a party defendant, filed his answer denying certain allegations of the bill and setting up as a part of the defense that there was nothing due to the complainants on the bond and mortgage. Complainants moved before Vice-Chancellor Bigelow to strike the answer as sham, and an order was granted accordingly. It is from that order, embodying a decree *pro confesso* against Barry, that the appeal is taken.

The conceded purpose of the complainants in bringing Barry into the proceedings was to hold him ultimately responsible on the bond. He was a proper, though not a necessary, party (*Andrews* v. *Stelle, 22 N. J. Eq. 478*), and inasmuch as he was joined, a decree against him would be *res adjudicata* in an action on the bond for the deficiency as to any defense he might have set up herein. *Mutual Savings Fund Harmonia* v. *Gunne, 110 N. J. Law 41*. The deficiency, if any, will be the amount by which the debt, as adjudged in the foreclosure decree, exceeds the proceeds from the foreclosure sale. *Vanderbilt* v. *Brunton Piano Co., 111 N. J. Law 596*. The decree *pro confesso* will leave Barry where he will not be entitled to notice of the taking of proofs leading up to the foreclosure decree. *Martin* v. *Morales, 102 N. J. Eq. 535*. Consequently, it appears that, as matters now stand, Barry will be helpless to dispute either the deficiency, if there be one, or his liability thereon.

The only proofs before either the vice-chancellor or us are the *ex parte* affidavits submitted on the making of the motion to strike. They disclose that Fuller holds as the nominee of, and dummy for, the complainants who, for their own purposes, procured, for the consideration of $300 paid by them to Onufrow, a conveyance of the lands from the latter to Fuller. In that conveyance was this clause: "Subject to all mortgages, taxes, liens of record and otherwise from which the parties of the second part agree to save the parties of the

first part harmless." The undertaking was made ostensibly by Fuller but actually by Datz. We are obliged to assume that the language of the quoted clause included within its terms complainants' mortgage, and thus gives rise to the question: From what was Onufrow to be saved "harmless?" Not from the mortgage itself because that was a burden only upon the lands and the lands were being conveyed; not from the strict wording of the bond for that instrument was in the hands of complainants and did not mention Onufrow. From what, then, other than an assumption of the debt which the mortgage was given to secure? Barry's proof is that Onufrow, in purchasing from him, as part consideration "assumed and agreed to pay the said bond and mortgage of Albert Datz and Anna C. Datz." If that be the fact, then Onufrow, as between her and Barry, became the principal debtor and Barry simply a surety for her (*Holland Reformed School Society* v. *DeLazier, 84 N. J. Eq. 442; affirmed, 85 N. J. Eq. 497*), and if, further, Datz, with knowledge of that fact, undertook to relieve Onufrow, a serious doubt, not settled by the chancery decision, at once arises as to Datz's right to hold Barry. Datz says that he did not know of that undertaking; but, again, *quære,* against *what* if not against that did he promise to hold Onufrow harmless?

Barry further swears that as a part of the consideration for the conveyance of the premises to Fuller "it was understood and agreed that the mortgage of the complainants was to be extinguished and canceled of record." This, we conceive, if true, would be adequate to sustain the disputed pleading; and it is this that becomes the nub of the argument because the vice-chancellor observed that inasmuch as Barry was not a party to that transaction and had not disclosed the source of his information or the facts from which he drew his inference, the statement was not evidential and must be disregarded. The principle thus applied is one with which, ordinarily, no fault could be found, but its pertinency to the peculiar posture of the present facts and issue is questionable.

The practice in chancery of striking a sham defense is

grounded in the statute (*P. L. 1915 ch. 116; 1 Cum. Supp. Comp. Stat. p. 271 pl. 33-117*), and, upon the judicial interpretation that the intent of the statute was to assimilate the equity practice in this respect to that at common law, the summary use of affidavits has been approved (*Penrose* v. *Absecon Land Co., 94 N. J. Eq. 436; Ibid. 814*), but the purpose of this summary procedure is that justice shall not be impeded by the barnacles of false pleadings and not that a party with a defense that is sufficient in law and that has colorable support in the facts shall be deprived of that defense because the speed and the informality of the procedure on motion does not permit the full development of his case. Where the hearing is limited to the submission of *ex parte* affidavits, the manifestation in the affidavits of *bona fides* and of a supporting background of fact must sometimes, in order to guard against injustice, be deemed sufficient to carry the defense over to a time when the testimony shall be orally given and the rights of subpœna and of cross-examination may be exercised; this particularly when the truth must come from an adverse party or a hostile witness. A situation, in the law courts, somewhat similar to this was considered and disposed of in *Berger* v. *Rospond, 108 N. J. Law 268*. The assumption agreement charged by Barry to have been entered into by Onufrow on the conveyance by Barry to her places both of these persons potentially in opposition on that issue. Datz is an adverse party. The extent of Datz's knowledge lies with Datz; proof of the agreement between Datz and Onufrow, except as disclosed in the deed from Onufrow, must, apparently, come from one or the other of them.

The promise to "save harmless" made on Datz's behalf is without satisfying explanation. It constituted a formal contract and was contained within a recorded deed in a transaction for which Datz accepts responsibility. Presumptively it is a source of, at least it is a support for, Barry's assertion. Having regard for the exigencies of the case, we think that Barry has manifested *bona fides,* with sufficient color in the proofs to tide his defense over to a time when opportunity shall be afforded to him for the subpœnaing of witnesses in

his behalf and the cross-examination of those produced adversely.

It further appears in the proofs that Datz has been receiving rents from the property, against which he claims to have made large disbursements, and from the pleadings that Datz claims as a balance due on the mortgage a sum which Barry denies. Barry has had no control over the property and no current rights or obligations relating thereto, and therefore no channel for direct knowledge, since he sold to Onufrow on June 17th, 1924. Inasmuch as the avowed purpose in bringing him into this suit is to hold him for the deficiency, he is vitally interested in the correct establishment of these facts. We think that there should be a discovery on, and proof of, these and like items and that opportunity to be heard thereon should in some way be preserved to him since, with an outstanding decree *pro confesso,* such privilege does not go to him as of course. *Martin* v. *Morales, supra; Kuhl* v. *Martin, 28 N. J. Eq. 370.*

The positions of Mrs. Datz and of Mrs. Barry are identical with those of their respective husbands.

The decree below will be reversed to the end that the record may be remitted to the court of chancery to be there dealt with in a manner consistent with this opinion.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.