185 N.J. Super. 289 (1982)
448 A.2d 498
CENTRAL PENN NATIONAL BANK, PLAINTIFF,
v.
STONEBRIDGE LIMITED, STONEBRIDGE CORPORATION, V.A.R.C., INC., JOHN B. CANUSO, JOAN E. CANUSO AND HERITAGE MORTGAGE FINANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Camden County.
Decided April 30, 1982.
*295 Thomas C. Burke for plaintiff (Farr, Reifsteck, Wolf & Ware, attorneys).
Jeffrey I. Baron for defendants Stonebridge Limited, Stonebridge Corporation, V.A.R.C., Inc., John Canuso, Joan Canuso (Jeffrey I. Baron, P.A., attorney).
John R. Halleran for defendant Heritage Mortgage Finance Company (Giordano, Halleran & Crahay, attorneys).
DEIGHAN, J.S.C.
This matter initially came before the court on application of defendants Stonebridge Limited and Stonebridge Corporation (Stonebridge) for an order requiring defendant Heritage Mortgage Finance Company (Heritage) to take all steps necessary to have its sheriff's sale at the same time as the sheriff's sale by plaintiff Central Penn National Bank (Central Penn).[1] That application has heretofore been denied and sale under the Central Penn mortgage has already been held; nevertheless, the court will briefly deal with the application. More important at this time is the cross-motion of Heritage (1) to declare that it may proceed against the guarantors of the note without being subject to the defense that the guarantors were not joined as party defendants, as required by N.J.S.A. 2A:50-2, or (2) to reforeclose the mortgage and join the guarantors, or (3) to *296 permit it to reopen its foreclosure judgment, amend the complaint and have its judgment amended to include the guarantors, and (4) to enjoin the sale of Central Penn until the court rules on the issue of the effect of the failure of Heritage to join the guarantors.
An emergency motion by phone conference was heard by the court on March 18, 1982 to enjoin the sale by Central Penn under its foreclosure judgment. The motion was objected to by both Central Penn and defendant Stonebridge. This sale was originally scheduled for January 22, 1982, but on application of Stonebridge the sale was adjourned to February 19, 1982 and was further adjourned until March 19, 1982. The court refused Heritage's application for further adjournment and the sale under the Central Penn mortgage was held. Therefore, the application of Heritage to enjoin the sale is moot.
First to be dealt with, even though it is also moot, is the application of Stonebridge to require Heritage to sell the lands under its mortgage simultaneously with the Central Penn sale. Heritage had a second mortgage on some of the same lands as Central Penn (common lands), and also held a mortgage on lands not covered by the Central Penn mortgage (Heritage lands).
The reason Stonebridge desired a simultaneous sheriff's sale on the common land subject to the Central Penn and Heritage mortgage was to provide Stonebridge with the opportunity for a "fair value hearing" in a later action for a deficiency. But, as Central Penn notes, the statutory right to such a hearing, N.J.S.A. 2A:50-3, is inapplicable in this case because the statute applies only to notes "given after the effective date of the amended act." The act was approved January 14, 1980 and was effective the first day of the calendar month next following the 90th day after enactment, namely, May 30, 1980. The notes antedate the effective date.
Even if defendants were to invoke the equitable fair value doctrine as promulgated by the Supreme Court in 79-83 Thirteenth Ave. Ltd. v. DeMarco, 44 N.J. 525 (1965), and reaffirmed *297 in Schwartz v. Bender Investments, Inc., 58 N.J. 444 (1971), it would appear that no such relief could be given in the case of a second mortgage or under the New Jersey statute. N.J.S.A. 2A:50-8 sets forth a one-year statute of limitations for the bringing of a deficiency where the lien of the mortgage has been extinguished by foreclosure of a prior mortgage and a sale of the mortgaged premises. A suit under N.J.S.A. 2A:50-2 for a deficiency on the first mortgage must be commenced within three months from the date of the sale and confirmation. Therefore, it cannot be argued that the foreclosure of a first and second mortgage should be simultaneous because the limitation on actions for deficiencies are not the same. There can be no equitable relief in the case of the second mortgage because the second mortgagee is under no obligation to bid at the first mortgagee's foreclosure sale or to foreclose on the property after the first mortgage has foreclosed.
Moreover, this argument was raised and rejected in Hurdy v. Russo, 118 N.J. Super. 114 (App.Div. 1972). In that case plaintiff held bonds secured by second mortgages and after foreclosure and purchase of the property by the first mortgagee at a sheriff's sale plaintiff brought suit on the bonds and was granted a summary judgment. On appeal defendants contended that they should have been allowed to prove the fair market value of the property and deduct that value from the balance due to the plaintiff. The Appellate Division, rejecting this argument, held:
We find defendants' argument to be without merit. N.J.S.A. 2A:50-8, under which this case properly arises, does not contain the deduction provisions for market value contained in N.J.S.A. 2A:50-3. Where, as here, plaintiff's security is extinguished by the foreclosure of a prior mortgage, he cannot look to the collateral for satisfaction of his debt, simply because there is none. Summary judgment was properly granted. [118 N.J. Super. at 115-116]
Heritage represented it would not be bidding at the Central Penn foreclosure, which means that Heritage will not be a proper party to any "fair market value" hearing with respect to the common lands. Defendants mortgagors and guarantors may not set off the fair market value against the second mortgage of Heritage, where Heritage does not purchase the *298 premises subject to the first mortgage. See Hillside Nat'l Bank v. Silverman, 116 N.J. Eq. 463 (Ch. 1934). For the foregoing reasons the court refused to compel the foreclosure of the common lands subject to the Central Penn and Heritage mortgages simultaneously and rejected Stonebridge's argument that it was entitled to a fair value hearing on lands subject to the second mortgage of Heritage.
Next to be dealt with are the cross-motions of Heritage. In order to deal with these cross-motions it is necessary to develop the procedural background in this matter.
On September 19, 1980 Central Penn filed a complaint in foreclosure for certain vacant lands comprising some 3,700 lots which were subdivided for a housing development located in Gloucester Township, Camden County, New Jersey. Heritage was made a defendant by virtue of the fact that it held a second mortgage on these same lands (common lands) but, as it later developed, Heritage also held mortgages on other lands which were not covered by the Central Penn mortgage (Heritage lands).
Heritage filed a crossclaim to foreclose its second mortgage on the common lands as against defendant owners Stonebridge only and not against the guarantors of the note, defendants V.A.R.C., Inc. and John and Joan Canuso (guarantors). Central Penn had made the guarantors party defendants. Even though Heritage did not crossclaim against the guarantors, the answer filed by Stonebridge to the crossclaim also included the answer by the guarantors.
Extensive discovery by way of voluminous interrogatories and depositions was engaged in by all parties. In the fall of 1981 the matters were scheduled for trial, but on September 18, 1981 Heritage moved to file an amended crossclaim to include the two additional mortgages which had been inadvertently omitted from the original crossclaim. Argument was heard on a continued return day of the motion and a crossmotion was made by Stonebridge to dismiss the Heritage crossclaim or to preclude *299 submission of evidence by Heritage because of a failure to answer interrogatories.
It appeared to the court that it would be unfair to Central Penn to further delay the foreclosure of its mortgage because of the application of Heritage; an order was entered permitting Heritage to amend its crossclaim within a period of two weeks, severing the Heritage foreclosure from the Central Penn foreclosure and ordering Heritage to submit full and responsive supplemental answers to interrogatories. Within the two-week period Heritage served an amended crossclaim in foreclosure again, against only the owners of the premises, defendant Stonebridge. On November 9, 1981, trial was held on the Central Penn foreclosure and on that date a judgment of a foreclosure was entered in favor of Central Penn against Stonebridge for the sum of $1,380,444.24, together with costs.
On December 21, 1981 trial on the Heritage amended cross-claim was commenced. Heritage presented its proofs and at the outset of the trial the attorney for Stonebridge made it clear that a crossclaim by Heritage was only against Stonebridge Limited. After presentation of the case by Heritage, the attorney for Stonebridge interposed no defense, explaining that the amended crossclaim was against only the mortgagors, Stonebridge, and therefore no defense to the foreclosure proceeding would be interposed. Counsel for Stonebridge went on to state:
I'd like that to be clear your honor, because the pleadings drafted by both Central Penn in [sic] the original crossclaim by Mr. Lueddeke had named the guarantors and I think, of course, the court would agree at this posture of the case the guarantors can't be parties until a deficiency, if it exists, has been established.
Actually, the original crossclaim did not name the guarantors, although they had been named in the complaint by Central Penn. The attorney for Heritage acknowledged that the amended crossclaim was only against the mortgagors, Stonebridge. Thus, it is abundantly clear that there was no mistake, inadvertance or misunderstanding concerning the failure to draft the amended crossclaim against the guarantors.
*300 Pursuant to the Declaratory Judgment Act, N.J.S.A. 2A:16-50 et seq., Heritage seeks to have the court determine that it may proceed against the guarantors without naming them in the foreclosure proceedings, or to declare that since the guarantors were parties to the action in the capacity of guarantors on the Central Penn note and because the same attorney represented the makers of notes to Central Penn and Heritage and also the guarantors in the Central Penn action, then, for all relevant purposes, the guarantors were parties to the Heritage cross-action and are bound by the principles of res judicata. In support of this proposition, Heritage cites Caterpillar Tractor Co. v. International Harvester Co., 120 F.2d 82 (3 Cir.1941), and 46 Am.Jur.2d, Judgments, § 535 at 688-690.[2]
N.J.S.A. 2A:16-56 provides: "When declaratory relief is sought, all persons having or claiming any interest which would be affected by the declaration shall be made parties to the proceedings." The declaratory judgment act cannot be construed so as to adjudicate the rights of parties who are not before the court. Carolina Cas. Ins. Co. v. Belford Trucking Co., 116 N.J. Super. 39, 43-44 (Ch.Div. 1971), aff'd 121 N.J. Super. 583 (App.Div. 1972). However, Heritage is asking the court to grant relief against parties who are not before the court.[3]
To maintain a declaratory judgment action there must be a justiciable controversy between adverse parties and plaintiff *301 must have an interest in the subject matter of the suit. Young v. Byrne, 144 N.J. Super. 10, 16 (Law Div. 1976). Relief by way of declaratory judgment should be withheld when the request is, in effect, an attempt to have the court adjudicate, in advance, the validity of a possible defense in some expected future law suit. Donadio v. Cunningham, 58 N.J. 309, 325 (1971). In a declaratory judgment action, courts should refuse advisory opinions and refrain from functioning in the abstract. Civil Service Comm'n v. Senate, 165 N.J. Super. 144, 148 (App. Div. 1979); Friedland v. State, 149 N.J. Super. 483, 495 (Law Div. 1977). No declaratory judgment concerning the issue of res judicata can be made because the guarantors are not the parties to the present proceedings.
For the same reason, a declaratory judgment at this time, that Heritage may proceed against the guarantors without naming them as the defendants in the foreclosure proceedings, may not be made. Nevertheless, for reasons which will hereinafter become apparent, and because the issues have been raised and briefed by both parties and involve the applicable statutes and procedures concerning liability on a deficiency as to the mortgagors, Stonebridge, the court will undertake to face the issue.
A mortgage debtor assumes a double risk: the hazard of losing the mortgaged property in the event of a default on the obligation secured by the mortgage and the risk that he may be saddled with a future obligation to pay any deficiency which may result from the mortgage. 30 N.J.Practice, (Cunningham & Tischler, Law of Mortgages), § 391 at 341-346 (1975). Recently the statutory procedure concerning actions for deficiency after a mortgage foreclosure sale was amended to require foreclosure of a mortgage evidenced by a note as well as a bond where a residence is the mortgaged premises. In order to understand the recent 1980 amendments to the mortgage foreclosure statute and proceedings for deficiencies it is necessary to examine the law as it existed prior to the amendments and prior law concerning mortgage foreclosures and deficiencies.
*302 The purpose of a foreclosure action is to determine the right to foreclosure and the amount due on the mortgage, Scheerer v. Lippman & Lowy, Inc., 125 N.J. Eq. 93, 95 (E. & A. 1939), and to give the purchaser at the foreclosure sale the title and estate acquired by the mortgagee, as well as the estate of the mortgagor at the time the mortgage was executed, free from subsequent encumbrances. Champion v. Hinkle, 45 N.J. Eq. 162, 165 (E. & A. 1888); Koppel v. Olaf Realty Corp., 62 N.J. Super. 103, 115 (App.Div. 1960); Camp Clearwater, Inc. v. Plock, 52 N.J. Super. 583, 589 (Ch.Div. 1958), aff'd 59 N.J. Super. 1 (App.Div. 1959). The issue in a foreclosure proceeding is the validity of the mortgage and the amount of indebtedness due thereon, Fidelity Union Trust Co. v. Guterl, 130 N.J. Eq. 404, 406 (E. & A. 1941); Montclair Savings Bank v. Sylvester, 122 N.J. Eq. 518, 522 (E. & A. 1937), and to adjudicate the right to foreclosure, namely, to resort to the mortgaged lands for satisfaction of the indebtedness. Fidelity Union Trust Co. v. Stengel, 131 N.J. Eq. 393, 396-397 (Ch. 1942).
A foreclosure proceeding is solely an action quasi in rem and the relief granted is only against the land itself, Usbe B. & L. Ass'n v. Ocean Pier Realty Corp., 112 N.J. Eq. 580, 582 (Ch. 1933), whereas, an action on the note is in personam. Ehnes v. King, 41 N.J. Super. 429, 433 (App.Div. 1956). A foreclosure judgment is res judicata as to the amount of the unpaid debt secured by the mortgage, 79-83 Thirteenth Ave., Ltd. v. DeMarco, 79 N.J. Super. 47, 55 (Law Div. 1963), aff'd 83 N.J. Super. 497 (App.Div. 1964), aff'd 44 N.J. 525 (1965), but is not res judicata as to the defendant's liability for any deficiency. Ehnes v. King, supra, 41 N.J. Super. at 433; Fidelity Union Trust Co. v. Stengel, supra, 131 N.J. Eq. at 396, 397; Weiss v. Pelton, 132 N.J. Eq. 248, 249-250 (Ch. 1942). The defendant in a deficiency action may also set up a variety of defenses based upon facts or circumstances connected with the inception of the mortgage. Compare 30 N.J.Practice, op. cit., § 303 at 227-230, concerning insufficient defenses to foreclosure proceedings, with § 401 at 369-372, *303 concerning defenses on the suit for deficiency other than credit for fair market value.
At common law the mortgagee could sue at law on the bond or other obligation prior to the foreclosure of the mortgage. Knight v. Cape May Sand Co., 83 N.J.L. 597, 601 (E. & A. 1912); Baldwin v. Flagg, 43 N.J.L. 495, 503 (Sup.Ct. 1881); Snyder v. Blair, 33 N.J. Eq. 208, 210 (Ch. 1880). By statute, where the bond and mortgage were given for the same debt, a foreclosure of the mortgage was required before any action could be instituted on the bond. N.J.S.A. 2A:50-2. The statute is inapplicable to an action on a promissory note secured by a mortgage. 79-83 Thirteenth Ave., Ltd. v. DeMarco, supra, 44 N.J. at 529; Schwartz v. Bender Inv. Co., supra. When a mortgage was secured by a promissory note the mortgagee, upon a default of the note, could first enforce the personal obligation and the statute did not apply. Gloucester City Trust Co. v. Goodfellow, 124 N.J.L. 118, 119 (E. & A. 1940); Chodosh v. Schlesinger, 119 N.J.L. 405, 406 (E. & A. 1938); Silver v. Williams, 72 N.J. Super. 564, 567-568 (App.Div. 1962).[4]
The foreclosure judgment herein (1) adjudicated the amount due and owing from the defendants to Heritage; (2) directed the amount be raised and paid out of the mortgaged premises; (3) granted Heritage possession of the mortgaged premises; (4) required the mortgaged premises be sold to raise and satisfy the money due to Heritage and (5) barred and foreclosed defendants, mortgagors, of and from all equity of redemption.
*304 Prior to May 1, 1980, if the mortgage debt was evidenced by a promissory note, the mortgage holder could sue on the note after default without first foreclosing the mortgage. (See note 4 and accompanying text, supra; see, also, Verona Trust Co. v. Bergdal, 129 N.J.L. 458, 459 (E. & A. 1942); Nelkin v. Silverman, 96 N.J. Eq. 654, 656-657 (E. & A. 1924). But if the mortgage holder chose to foreclose first and then sued on the note for a deficiency, this apparently would revive the mortgagor's equitable right of redemption. Osborne v. Tunis, 25 N.J.L. 633, 651 (E. & A. 1856). In such instance the mortgagor could not assert the statutory right to claim credit for the fair value of the mortgaged property. 79-83 Thirteenth Ave., Ltd. v. DeMarco, supra, 44 N.J. at 529.
Since May 1, 1980 a foreclosure of the mortgage is required before any action to recover a personal judgment can be commenced, whether the mortgage debt is evidenced by a bond or by a note N.J.S.A. 2A:50-2. This statute requires a foreclosure of the mortgage first, then an action on the note, the same as the procedure on a bond, for a deficiency, except as provided in N.J.S.A. 2A:50-2.3:
This act shall not apply to proceedings to collect a debt evidenced by a note and secured by a mortgage on real property in the following instances:
a. Where the debt secured is for a business or commercial purpose ...
b. Where the mortgaged property is other than a one-family, two-family, three-family, or four-family dwelling ...
........
(d) Where a banking institution ... operating pursuant to State or Federal law, is the lender, and the mortgage so given is subject to the lien or liens of a prior mortgage or mortgages not held by such institution....
In the present case there is no question but that the debt secured is for business or commercial purposes and therefore falls within the exception of N.J.S.A. 2A:50-2.3(a) and (b). This conclusion is fortified by the legislative statement annexed to the 1980 amendment:
This bill eliminates the difference between bonds and notes secured by residential real estate mortgages. It extends present law to allow a mortgagor to dispute the amount of a deficiency in a foreclosure in the case where a note is involved as well as those where a bond is involved. [Emphasis supplied]
*305 In First Mut. Corp. v. Grammercy & Maine, Inc., 176 N.J. Super. 428 (Law Div. 1980), the court noted that where mortgage loans were made for the purpose offinancing acquisition of property for a casino site, the lenders were not required to foreclose before seeking entry of judgment by confession on the notes secured by the mortgage, because the debt was incurred "for a business or commercial purpose" which precluded any application of the "foreclosure first requirement." Id. at 440. Clearly, Heritage is not bound by the foreclosure-first restrictions in the 1980 amendments to the statute and could proceed to institute suit on the note against the guarantors as well as the mortgagors without instituting foreclosure proceedings.
It appears that the exception in N.J.S.A. 2A:50-2.3(d) is also applicable at least insofar as the common lands are concerned. On those lands the second mortgage of Heritage was extinguished by the Central Penn foreclosure. Even without a statute, if the mortgage has previously been extinguished by foreclosure of a superior mortgage or other lien, by a tax sale, by condemnation or in some other manner, obviously a mortgagee cannot be required to first foreclose the mortgage. In Light v. Granatell, 171 N.J. Super. 557 (App.Div. 1979), it was held that a mortgagee could prosecute an action on the mortgage bond in New Jersey after the mortgage covering land in Newburgh, New York, was extinguished by foreclosure of Newburgh's superior tax lien where the mortgage "is relegated to the position of a holder of a bond without security." Id. at 561-562. See, also, Hurdy v. Russo, supra.
N.J.S.A. 2A:50-2 also prohibits an action for a deficiency against any person answerable on the mortgage bond or note unless such person has been made a party to the prior foreclosure action. The purpose of the joinder requirement is to make the foreclosure judgment res judicata as to the amount of the unpaid mortgage debt, Datz v. Barry, 115 N.J. Eq. 84, 85 (E. & A. 1934); Montclair Savings Bank v. Sylvester, supra, 122 N.J. Eq. at 524; Usbe B. & L. Ass'n v. Ocean Pier Realty Corp., *306 supra, 112 N.J. Eq. at 583, and in addition to give some protection to the obligor, especially if the obligor has sold the mortgaged property. Ledden v. Ehnes, 22 N.J. 501, 508-509 (1956); Montclair Savings Bank v. Sylvester, supra, 122 N.J. Eq. at 524-525; Lapp v. Belvedere, 116 N.J.L. 563, 569 (E. & A. 1936). Another purpose for naming the original obligors or guarantors in the foreclosure suit is to permit them to redeem or bar any equity of redemption. As previously noted, even though the amount of the mortgage debt as determined in the foreclosure action is res judicata as to all parties, it is not res judicata as to any defendants' liability in a later action on a bond for a deficiency. Ehnes v. King, supra, 41 N.J. Super. at 433; Usbe B. & L. Ass'n v. Ocean Pier Realty Co., supra,
But, as has been pointed out, N.J.S.A. 2A:50-2 is not applicable to business or commercial transactions by virtue of the exceptions in N.J.S.A. 2A:50-2.3. Therefore, the requirement of N.J.S.A. 2A:50-2 that a person be made a party to the foreclosure action would not be applicable here. Stonebridge, however, vigorously maintains that the provisions of N.J.S.A. 2A:50-22 apply:
No action to enforce an agreement, express or implied, to assume or guarantee the payment of any mortgage, or of any bond or note secured by a mortgage, shall be maintained against a person making such agreement unless the mortgage shall have been first foreclosed, or extinguished by the foreclosure of a prior mortgage or lien, provided no such action may be maintained unless:
a. The person making such agreement was made a party defendant in the foreclosure action ... [Emphasis indicates change made by the 1980 amendment]
Stonebridge contends that the statute applies to "any ... notes secured by a mortgage" and is all-inclusive and not limited to any particular type of transaction, namely, residential as opposed to commercial. It argues that there is no legislative intent to limit the scope of N.J.S.A. 2A:50-22, but rather to enlarge its provisions to apply to "any note secured by a mortgage."
Next, Stonebridge asserts that it is unreasonable to believe that the Legislature intended to exempt all of the provisions of N.J.S.A. 2A:50-1 et seq. from commercial loans by the enactment *307 of N.J.S.A. 2A:50-2.3, because the prior statute is located in a completely different part, namely, Article II of chapter 50. They further argue that the all-inclusive language of N.J.S.A. 2A:50-22 implies a clear intent to apply its provisions to "any ... note secured by a mortgage." Lastly, they reason that the explanatory language in the introduction of the statute, "supplementing chapter 50 of New Jersey Statutes," indicates an attempt to supplement Article II under which N.J.S.A. 2A:50-22 is contained.[5]
All these arguments of defendant Stonebridge are categorically rejected. Chapter 50 of the New Jersey Statutes is contained in the one legislative subtitle. It amended existing statutes, including N.J.S.A. 2A:50-22, basically by adding the word "note" in addition to the word "bond." This essentially was the purpose of the amendment. It added the word "guarantee" in N.J.S.A. 2A:50-22 but this has no bearing on the present discussion. The existing provisions of chapter 50 were amended, but 2A:50-2.1 to 2.4 are new provisions
Obviously, Article I, N.J.S.A. 2A:50-1 to 21, applies to proceedings upon the original bonds. Article II is entitled "Assumption of Bonds and Mortgages" and encompass N.J.S.A. 2A:50-22 to 28. It is an entirely different statute and was enacted at an entirely different time. It applies to situations as recited in N.J.S.A. 2A:50-22, namely, those involving agreements to assume the payment of a mortgage. This normally arises when property is sold and the grantee assumes the existing mortgage. It has no application where the bond and mortgage represent the original indebtedness and security. See 30 N.J.Practice, op. cit., § 233 at 106-107, distinguishing between the original obligor on the bond (N.J.S.A. 2A:50-2) and persons who have assumed payment of the bond (N.J.S.A. 2A:50-22). The authors refer to the latter statute as applying to an "intermediate owner." 30 N.J.Practice, op. cit., § 222, n. 7 at 81. *308 They identify the basic statutory rules as applying to an assuming guarantee of mortgaged land. Id. § 392, n. 25 at 347; § 393, n. 57 at 352. The authors further point out that, pursuant to N.J.S.A. 2A:50-6, a notice must be filed before instituting an action on the bond against an obligor but that in suing the original obligor where the mortgage has been extinguished by a foreclosure of a prior action, the right to redeem is not revived. N.J.S.A. 2A:50-9. But where suit is brought against an assuming grantee under N.J.S.A. 2A:50-22(c) it is not clear whether the right of redemption can be revived. 30 N.J.Practice, op. cit., § 395 at 354-355; § 397 at 360-361.
The authors of the treatise, in the 1981 pocket parts under § 392, comment:
It seems unlikely, however, that the coverage of N.J.S.A. 2A:50-22 was really intended to be more extensive than the coverage of N.J.S.A. 2A:50-2. [30 N.J.Practice, op. cit., § 392 at 30 (1981 Supp)]
It is abundantly clear that N.J.S.A. 2A:50-22 has no application whatsoever to the facts of the present case where the note and mortgage involved are the original undertaking and the obligation does not involve an assumption of a bond and mortgage. Under these circumstances it is not necessary to include the guarantors of the note in the foreclosure proceedings since the matter involved a commercial transaction.[6]
Heritage alternatively moves to permit it to reopen the foreclosure judgment, to amend the complaint to include the guarantors and to re-enter judgment on foreclosure. Heritage applies for relief under R. 4:50-1(f) to vacate the judgment so as to permit the addition of the guarantors as party defendants to the foreclosure proceedings. This rule permits the court to relieve a party from a final judgment for "any other reasons justifying relief from the operation of the judgment or order." Subsection (f) of R. 4:50-1 is the elusive "catch all" category. As noted in Court Investm. Co. v. Perillo, 48 N.J. 334 (1966):

*309 No categorization can be made of the situation which warrant redress under subsection (f) ... [T]he very essence of (f) is its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice. [at 341]
In view of the determination that the suit against the guarantors may be maintained without joining them in the foreclosure proceedings, the procedure of reopening the judgment, amending the complaint and adding the guarantors may not be necessary. However, if for any reason it should be determined in supplemental proceedings in a suit on the note that the guarantors should have been made party defendants to the foreclosure proceedings, then Heritage will have been impaled on its own election. Under the present practice, procedure should not be a guessing game. The primary purpose of our judicial procedure and the governing rules is to facilitate the granting of justice and to bring about an impartial and expeditious determination of the essential merits of the issues between the parties. Devlin v. Surgent, 18 N.J. 148, 153 (1955).
The general purpose of the rules is to broaden the procedural powers of our courts to the end that just dispositions on the merits may be facilitated and determinations on the basis of procedural niceties may be avoided. [Handelman v. Handelman, 17 N.J. 1, 11 (1954); emphasis supplied]
The general policy against procedural frustrations of determinations on the merits is implicit in the philosophy of the new judicial structure and court rules. Escoett v. Aldecress Country Club, 16 N.J. 438, 452 (1954). The rules are to be construed to secure simplicity in the procedure, fairness in administration and the elimination of unjustifiable expense and delay. They are a means of justice and not an end in themselves. State v. Emmett, 108 N.J. Super. 322, 325 (App.Div. 1970). Over a century ago our courts commented upon the trial on the merits as opposed to the pitfalls of common law pleading. "[T]he end of all legal proceedings is justice, and forms are merely means to that end." Price v. N.J.R. & Trans. Co., 31 N.J.L. 229, 233 (Sup.Ct. 1865).
It has been pointed out that in a foreclosure proceeding the only issues are the validity of the mortgage, the amount *310 of the indebtedness and the right to resort to the mortgage land for satisfaction of the indebtedness. A foreclosure judgment is res judicata as to the amount of the unpaid debt secured by the mortgage but is not res judicata as to the defendants' liability for any deficiency. The personal defenses in a suit against the mortgagors and guarantors are not proper defenses to the mortgage foreclosure proceedings. The interposition of personal liability defenses in the foreclosure proceedings would have been premature. See Hudson City Contracting Co., Inc. v. Jersey City Incinerator Auth., 17 N.J. 297, 311 (1955). In Hudson City the single controversy issue as an estoppel formulated by Massari v. Einsiedler, 6 N.J. 303 (1951), was raised, but the Supreme Court dismissed the contention on the basis that the issue was premature and could not have been asserted in prior litigation.
A foreclosure involving a bond and mortgage may require a three-step procedure: (1) foreclosure of the mortgage in the Chancery Court; (2) an action in the Law Division on the bond, with right to a hearing on the fair market value of the mortgaged premises or a value fixed by three appraisers under agreement of the parties, N.J.S.A. 2A:50-3 and (3) an action to redeem on the bond for a period of six months, N.J.S.A. 2A:50-4, by reopening the Chancery judgment. 110-112 Van Wagenen Ave. Co. v. Julian, 101 N.J. Super. 230, 233-234 (App.Div. 1968). An action involving a note and mortgage may likewise involve a three-step procedure: (1) an action in the Chancery Division to foreclose the mortgage; (2) an action at law on the note and (3) an action in Chancery in the foreclosure proceedings for a determination of the fair market value. 79-81 Thirteenth Ave. v. DeMarco, supra. The proceedings on the note further require an objection to the foreclosure sale and an application for a fair market value hearing. If suit on the note has been instituted in the Law Division, a motion must be made in that Division to stay that action pending the fair market value hearing, R. 4:52-6, or if no action has been instituted, a motion may be made to restrain the mortgagee from instituting an action in the Law Division pending the fair market value hearing.
*311 These procedures offend the single controversy doctrine which was formulated to avoid delays, wasteful expense and protracted litigation caused by multiplicity and fragmentation of litigation and splitting of controversies; the single controversy doctrine is designed to promote the need for judicial economy and efficiency and the desirability to adjudicate all controversies between the parties in the same proceedings. See Volonte, "The Entire Controversy Doctrine: A Novel Approach to Judicial Efficiency," 12 Seton Hall L.Rev. 260, 268-277 (1982).[7]
In Leisure Tech. v. Klingbeil, 137 N.J. Super. 353 (App.Div. 1975), a foreclosure action, the single controversy doctrine was invoked to require a party to litigate all aspects of a controversy in a single proceeding. The Appellate Division was not dealing with a suit for personal liability on a bond or note; it was dealing specifically with a defense to the foreclosure proceeding itself. Even before Leisure Technology, the Chancery court recognized a device to segregate defenses to personal liability on the bond in foreclosure proceedings and yet preserve those defenses to the obligor. In Usbe Bldg. & Loan Ass'n v. Ocean Pier Realty Corp., supra, a motion was made to strike an equitable answer and counterclaim directed to a defense and nonliability on the bond. While the Chancery court granted the motion to strike, it recognized the problem of multiplicity of suits and simply retained jurisdiction to hear equitable defenses to liability on the bond.
If sued at law the obligor would have to appeal to equity for relief. Under the 1932 act [N.J.S.A. 2A:50-2], he must be made a party to the foreclosure suit if the complainant intends to pursue him for deficiency. In these circumstances and to avoid circuity and multiplicity of suits, his equitable defenses ought to be entertained and the counter-claim retained pending the decree of foreclosure sale, unless the complainant disclaims the right to sue for deficiency. This course will make for greater simplicity, convenience and economy of time and costs. [112 N.J. Eq. at 583-584]
*312 The single controversy doctrine may also be justified on the equitable doctrine that once a case is properly brought in the Chancery Division, it should remain there for final resolution even after the disposition of the equitable issues. The rationale for retaining jurisdiction is the equitable principle requiring full adjudication of even legal issues, and the mandate of Article VI of the 1947 Constitution prohibit the fragmentation of litigation. Steiner v. Stein, 2 N.J. 367, 373 (1949). Stein relied upon Fleischer v. James Drug Stores, Inc., 1 N.J. 138 (1948), in which the court stated:
It is the settled rule that where equity has rightfully assumed jurisdiction over a cause for any purpose, it may retain the cause for all purposes, and proceed to a final determination of the entire controversy and, except where the jurisdiction of equity depends on the prior establishment of a right at law, settle purely legal rights and grant legal remedies. [citation omitted] When the basis of the jurisdiction is once perceived, its scope and extent become readily apparent. The rationale of the rule that an equitable feature draws the cause completely within the cognizance of equity is the policy of avoiding a multiplicity of suits; and so jurisdiction of the whole controversy may be assumed for the doing of complete justice in the one suit. The constitutional right of trial by jury is, of course, subject to this inherent equitable jurisdiction. Equity has a general jurisdiction to adjudicate ancillary and incidental matters. [at 150]
Heritage is permitted to reopen the foreclosure judgment and amend the complaint to make the guarantors as party defendants. Since the guarantors are not before the court a summons and complaint must be issued and served upon them, unless they consent to becoming parties. Ultimately, a judgment will be entered in accordance with the amount of the judgment heretofore entered. This right is granted to Heritage on the following terms and conditions: (1) that Heritage suspend calculation of interest from the date of its application to the date of final judgment; (2) that Heritage reimburse counsel for Stonebridge reasonable counsel fees in court appearances, preparation of briefs and argument of motions in opposition to this application and (3) that in the event of a suit for a deficiency, and upon objection to the sale of the mortgage premises, defendants be permitted to a fair market value hearing under the equitable deficiency proceedings pursuant to *313 79-81 Thirteenth Ave. v. DeMarco, supra; (4) that this court retain jurisdiction of the deficiency proceedings and that the deficiency, after credit for fair market value, be entered in those supplemental proceedings in lieu of instituting a separate action in the Law Division. The mortgagors and guarantors may set forth in the deficiency proceeding any and all defenses that they may have to nonliability on the obligation besides credit for fair market value. See 30 N.J.Practice, op. cit., § 401 at 368-372.
NOTES
[1] On November 9, 1981 a judgment in the sum of $1,380,444.34 was entered on Central Penn's first mortgage. On January 14, 1982 a judgment of $4,366,948.32 was entered on the Heritage second mortgage.
[2] These authorities do indeed seem to stand for the proposition that a judgment as to a person, although not a party to a prior action, is res judicata against that person who directed the defense of the party in the prior action and the judgment went against that party. This may be so, at least where a right is actively exercised by prosecution or defense of this action, employment of counsel, control of the defense, filing of an answer, payment of expenses or costs of the action, taking of an appeal, or doing such other acts as are generally done by the parties in litigation.
[3] The court severed the crossclaim of Heritage from the complaint of Central Penn. Heritage did not make the guarantors a party to the crossclaim; therefore the guarantors are not parties to the pending proceedings.
[4] Our court rule recognizes this distinction. Under R. 4:27-2, relating to the joinder of remedies, it is set forth that if a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, then the two claims may be joined in a single action, but the court shall grant relief only in accordance with the relative substantive rights of the parties. The provision of N.J.S.A. 2A:50-2 requiring foreclosure of a mortgage before suit on the bond is an exception to the rule. Judge (now Justice) Pashman, sitting in the Chancery Division, observed that the holder of a note, as opposed to a bond, secured by a mortgage may join a personal action on the note with the foreclosure action. Appell v. Reiner, 86 N.J. Super. 515, 518 (Ch.Div. 1965).
[5] For a comparative analysis of the history of N.J.S.A. 2A:50-2 and N.J.S.A. 2A:50-22 see River Edge S & L Ass'n v. Clubhouse Associates, 178 N.J. Super. 177, 183-184 (App.Div. 1981).
[6] Moreover, N.J.S.A. 2A:50-22 applies: with respect to any note given after the effective date of this amendatory act, (L. 1979, c. 286, amending Title 2A, chapter 50). The note involved in the present transaction was executed by Stonebridge and guaranteed on May 22, 1974.
[7] On the single controversy doctrine see Falcone v. Middlesex Cty. Med. Soc., 47 N.J. 92 (1966); Massari v. Einsiedler, supra; Malaker Corp. v. First Jersey National Bank, 163 N.J. Super. 463 (App.Div. 1978) certif. den. 79 N.J. 488 (1979); Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J. Super. 277 (App.Div. 1977), certif. den. 75 N.J. 528 (1977); R. 4:27-1(b).