NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-3255

_____

AURA INVESTORS, LLC; THIRD STATE INVESTORS, LLC,
                                                          Appellants
v.

ROMSPEN MORTGAGE LIMITED PARTNERSHIP,
an Ontario, Canada limited partnership

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1:24-cv-00952)
District Judge: Honorable Karen M. Williams

_____

Submitted Under Third Circuit LAR 34.1(a)
September 19, 2025

Before: BIBAS, MONTGOMERY-REEVES, and AMBRO, Circuit Judges

(Opinion filed: November 4, 2025)

_____

OPINION[*]

_____

AMBRO, Circuit Judge

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Aura Development Group LLC ("Aura Development") agreed to mortgage various parcels of land to secure financing for a development project, but trouble quickly ensued. To begin, Aura Development did not actually possess title to all of the land it had agreed to mortgage, and its anticipated acquisition of certain parcels fell through. Further complicating matters, an affiliate of Aura Development funded a purchase of two such parcels through a newly formed subsidiary in exchange for a first-priority and second-priority lien, leaving Aura Development's financier with less security than it had bargained for.

Aura Development soon found itself in default, and its financier demanded full repayment. To that end, the financier also filed suit in state court, seeking an equitable mortgage consistent with the terms Aura Development had accepted in the underlying loan documents.[1] And once the state court granted that relief, Aura Development's interloping affiliate filed suit in the United States District Court for the District of New Jersey to clarify the amount and scope of the equitable mortgage. The Court, for its part, dismissed the complaint on preclusion grounds, and we affirm its order because we agree that issue

---

[1] Whereas classical mortgages are formal, publicly filed documents that establish liens on real property, an equitable mortgage treats real property as collateral in the absence of traditional public-filing formalities. As we have previously observed, "[t]he whole doctrine of equitable liens or mortgages is founded upon that cardinal maxim of equity which regards as done that which has been agreed to be, and ought to have been, done." *Midlantic Nat'l Bank v. Bridge (In re Bridge)*, 18 F.3d 195, 200 (3d Cir. 1994) (internal citations omitted). State law may therefore impose an "equitable mortgage" where the circumstances make clear that a party intended yet failed to convey a lien on its property. *See*, *e.g.*, *id.* Equitable mortgages are typically created by the deposit with a lender of previously recorded titles or deeds, thus equivalent to a pledge entitling the applicable lender to foreclose on the property in court. Here, however, the intent was to grant Romspen a security interest in property to be acquired at a later date.

preclusion controls.

## I. BACKGROUND

Years ago, the principal of Aura Development undertook to develop hundreds of single-family homes in the Township of Elk, New Jersey. To obtain necessary funds for the construction of the development, Aura Development sought financing from Romspen Mortgage Limited Partnership ("Romspen"). It agreed to provide Aura Development with a term loan and revolving credit facility, both of which were memorialized in a loan agreement (the "ADG Loan Agreement") and promissory notes (the "ADG Notes"). With respect to the term loan, Aura Development agreed, among other things, to repay a principal sum of $8,500,000 at an interest rate of 12% per annum. As to the revolving loan, Romspen provided Aura Development with up to an additional $4,500,000 in commitments.

To induce Romspen to provide such financing, Aura Development agreed to liens on various parcels of land as collateral (the "ADG Mortgage"). However, Aura Development had not yet taken title to a subset of the parcels it had agreed to mortgage to Romspen (such subset, the "Unacquired Parcels"). The ADG Loan Agreement thus provided—without precondition—that Aura Development would convey a first mortgage on each of the Unacquired Parcels after taking title to them. As planned, Aura Development acquired one of the Unacquired Parcels shortly thereafter, at which time the ADG Mortgage was modified to grant Romspen a first-priority lien on that parcel. And in the following months Aura Development drew on the loans provided by Romspen to finance improvements benefitting the remaining Unacquired Parcels ("Parcels G and H").

3

Trouble began when Aura Development was unable to close on Parcels G and H. In response, Appellant Third State Investors, LLC ("Third State")—which was controlled by the principal of Aura Development—formed Appellant Aura Investors, LLC ("Aura Investors" and, together with Third State and Romspen, the "Parties") for the purpose of taking title to Parcels G and H. Aura Investors succeeded in doing so, and it granted Third State (x) a first-priority mortgage on both parcels to secure payment of the purchase money funding, and (y) a second-priority mortgage on the parcels to secure all of its other obligations to Third State. Third State recorded both mortgages on June 8, 2015.

Aura Development ultimately defaulted on its loans to Romspen by, among other things, failing to repay all principal and interest by the May 1, 2016, maturity date specified in the ADG Loan Agreement. As a result, the total principal and interest outstanding under the loans provided by Romspen was accelerated as permitted by the ADG Notes. Then, in August of 2016, Romspen filed suit (the "State Court Action") against Aura Investors, Aura Development, and Third State in the Superior Court of New Jersey, Gloucester County, Chancery Division (the "State Court"), seeking relief in the form of an equitable mortgage over Parcels G and H.

The State Court Action stretched on for several years, culminating in a final judgment (the "Final Judgment") that explicitly incorporated and deemed final the findings set out in an earlier order issued by the State Court (the "May 28 Order"). In particular, the Final Judgment incorporated the following from the May 28 Order:

> Romspen is awarded a second priority equitable mortgage . . . based on the same terms and conditions, and securing the same total debt, as the May 16, 2013 Mortgage, Assignment of

4

> Leases and Rents, Security Agreement, and Fixture filling
> given to Romspen by Aura Development Group, LLC.

JA 144 (internal parentheticals omitted); *see also* JA 150-51 (incorporating findings from the May 28 Order). On October 14, 2021, Third State and Aura Investors filed a notice of appeal with the Superior Court of New Jersey, Appellate Division, seeking to challenge the Final Judgment and equitable mortgage. The Appellate Division affirmed the State Court in all respects on January 22, 2024.

Third State and Aura Investors filed a complaint in the District Court shortly after the Appellate Division affirmed the State Court. Specifically, they asserted claims under the New Jersey Quiet Title Statute, N.J. Stat. Ann. 2A:62-1, and sought a declaratory judgment to "fix the dollar amount" of Romspen's equitable mortgage (the "District Court Action"). JA 35. Romspen, for its part, filed a motion to dismiss on April 17, 2024, arguing that the District Court Action was doomed on preclusion and other grounds.

Prior to a decision on its motion to dismiss, Romspen filed suit in the State Court seeking to foreclose on its equitable mortgage on Parcels G and H (the "Foreclosure Action"). Then, on November 22, 2024, the District Court granted Romspen's pending motion and dismissed the District Court Action with prejudice. Third Street and Aura Investors ("Appellants") appeal from the order dismissing their complaint.

## II. JURISDICTION AND STANDARD OF REVIEW

The record before us did not clearly establish diversity jurisdiction. Under 28 U.S.C. § 1653, however, we are authorized to grant leave to amend jurisdictionally defective pleadings. To that end, on August 21, 2025, we ordered the Parties to submit supplemental

5

letter memoranda stating the basis for jurisdiction under 28 U.S.C. § 1332. On September 24, 2025, we ordered Appellants Aura Investors and Third Street to amend their complaint or submit supporting affidavits, certifications, or other proofs to substantiate or supplement their allegations of jurisdiction. They submitted a further supplemental letter explaining the basis for jurisdiction and identifying the citizenship of each of the Parties, which confirmed diversity jurisdiction. Accordingly, we proceed with subject matter jurisdiction under 28 U.S.C. § 1332(a) and appellate jurisdiction under 28 U.S.C. § 1291.

"We exercise fresh review over the District Court's dismissal of the suit under Federal Rule of Civil Procedure 12(b)(1)." *Vuyanich v. Smithton Borough*, 5 F.4th 379, 384 (3d Cir. 2021). Likewise, we exercise *de novo* review over an appeal from the District Court's grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Marshall v. Lauriault*, 372 F.3d 175, 179 (3d Cir. 2004). We construe the complaint liberally and accept all factual allegations therein as true. *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017). "The dismissal will be upheld if we agree with the District Court that the Appellants can prove no set of facts that would entitle them to relief." *Marshall*, 372 F.3d at 179.

### III. ISSUE PRECLUSION CONTROLS[2]

In relevant part, issue preclusion "bars successive litigation of an issue of fact or

---

[2] The District Court dismissed Appellants' complaint based on claim preclusion, issue preclusion, and the *Rooker-Feldman* doctrine (which generally prohibits federal courts, but for the Supreme Court, from reviewing state court decisions without explicit congressional authorization). As we explained in a recent decision, the *Rooker-Feldman* doctrine has a narrow application and "does not 'supersed[e] the ordinary application of preclusion law' when a plaintiff relitigates a matter decided in another forum." *In re Adams*, 151 F.4th 144, 152 (3d Cir. 2025) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 281 (2005)) (alteration in original). Because we agree with the District Court that issue

6

law that was actually litigated, resolved in a valid court determination, and essential to that prior judgment, even if the issue recurs in the context of a different claim." *In re Adams*, 151 F.4th 144, 153 (3d Cir. 2025) (cleaned up). As we have explained, the doctrine applies when "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *Burlington N. R. v. Hyundai Merch. Marine*, 63 F.3d 1227, 1231–32 (3d Cir. 1995) (cleaned up). Each element is satisfied here.

As the District Court observed, the Parties devoted significant attention throughout the State Court Action to litigating the scope and dollar amount of Romspen's equitable mortgage. This process culminated in the Final Judgment, which incorporated an earlier finding by the State Court that Romspen held a second priority equitable mortgage "on the same terms and conditions, and securing the same total debt, as the [ADG Mortgage]." JA 144 (internal parentheticals omitted); *see also* JA 150-51 (incorporating findings from the May 28 Order). After the Appellate Division affirmed the Final Judgment, Appellants asked the District Court "to fix the dollar amount of Romspen's equitable mortgage and determine whether it has been [s]atisfied." JA 44-46. Thus, they seek to relitigate *precisely* the issue that was both litigated and determined by a final judgment in state court, and the

---

preclusion controls, we decline to plumb the narrow depths of the *Rooker-Feldman* doctrine here. *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 116 (3d Cir. 2020) ("[W]e may affirm on any ground supported by the record . . . .").

doctrine of issue preclusion prohibits their attempt to do so.[3]

Appellants dispute this outcome by asserting that the Final Judgment did not liquidate and explicitly state the face value of the equitable mortgage. And while that argument is clever, it misses the mark. Indeed, as the District Court explained in its oral decision, the exact dollar amount of the equitable mortgage was determined by the ADG Mortgage. In other words, the State Court Action ended in a determination that the current amount of the equitable mortgage may ebb and flow with the ADG Mortgage based on the terms and conditions in the ADG Loan Agreement. That the State Court did not list the precise dollar value of the ADG Mortgage—and therefore the equitable mortgage—as of the date of the Final Judgment does not mean that Appellants enjoy a second bite at the apple with respect to determining the scope and face value of the equitable mortgage. [4]

As ordered by incorporation into the Final Judgment, the equitable mortgage secures the same total debt as the ADG Mortgage, and the doctrine of issue preclusion bars Appellants from challenging that determination before the District Court. If they wish to liquidate the current value of the equitable mortgage, the Foreclosure Action is the appropriate venue. *See*, *e.g.*, *Cent. Penn Nat'l Bank v. Stonebridge Ltd.*, 448 A.2d 498, 504

---

[3] Equally as relevant to our conclusion that Appellants seek to relitigate the amount and scope of the equitable mortgage, rather than simply fix its present value, is that they sought a judgment from the District Court declaring that the equitable mortgage is limited by Romspen's cost-sharing advances. The State Court considered and ultimately dispensed with that argument when it determined that the equitable mortgage secured "the same total debt" as the ADG Mortgage. JA 144.

[4] Notably, Appellants made much of the fact that the Final Judgment does not specifically quantify the value of Romspen's mortgage during the state court process as well. Like we do here, the State Court and Appellate Division rejected that argument at every turn.

8

(N.J. Super. Ct. Ch. Div. 1982) ("The purpose of a foreclosure action is to determine the right to foreclosure and the amount due on the mortgage . . . .").

\*     \*     \*

We thus affirm the dismissal of Appellants' complaint.